## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
   :
Leonid Falberg, as representative of a   :
class of similarly situated persons, and   :
on behalf of The Goldman Sachs 401(k)   :
Plan,   :
   :
          Plaintiff,   :     Civil Case No. 1:19-cv-09910-ER
   :
       - against -   :
   :
The Goldman Sachs Group, Inc., The   :
Goldman Sachs 401(k) Plan Retirement   :
Committee, and John Does 1–20,   :
   :
          Defendants.   :
   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Richard C. Pepperman II
Thomas C. White
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: 212-558-4000
Facsimile: 212-558-3588
peppermanr@sullcrom.com
whitet@sullcrom.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND .........................................................................................................................4

    A.    Plaintiff's Claims and the Proposed Class .................................................................4

    B.    The Committee's Exercise of Its Fiduciary Responsibilities....................................5

    C.    Plaintiff's Investments in Three of the GSAM Mutual Funds................................6

ARGUMENT .............................................................................................................................7

I.    Plaintiff Has Not Carried His Evidentiary Burden to Prove Class-Wide Standing............8

    A.    Plaintiff's Proposed Class Includes Many Uninjured Plan Participants.................8

    B.    Plaintiff Fails to Prove Any Class-Wide Injury Unrelated to Performance...........11

II.    Plaintiff Has Not Carried His Evidentiary Burden Under Rule 23(a) ..............................13

    A.    Plaintiff Ignores the Details of His Own Investments and the Fundamental
           Intra-Class Conflicts Created by the Selection of Comparator Funds..................14

    B.    Plaintiff Ignores ERISA's Three-Year Statute of Limitations...............................17

    C.    Plaintiff Ignores Plan Participants' Arbitration Agreements................................18

III.    Plaintiff Has Not Carried His Evidentiary Burden Under Rule 23(b)..............................19

    A.    Claims for Money Damages Cannot Be Certified Under Rule 23(b)(1) ..............19

    B.    Plaintiff Fails to Satisfy Rule 23(b)(1)(A)'s Requirements...................................23

    C.    Plaintiff Fails to Satisfy Rule 23(b)(1)(B)'s Requirements ...................................24

IV.    Plaintiff's Proposed Class Definition Is Overbroad...........................................................25

CONCLUSION...........................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Express Co.* v. *Italian Colors Rest.*,
    133 S. Ct. 2304 (2013) ........................................................................................7

*In re Asacol Antitrust Litig.*,
    907 F.3d 42 (1st Cir. 2018) ................................................................................8

*Bauer-Ramazani* v. *Teachers Ins. & Annuity Ass'n of Am.*,
    290 F.R.D. 452 (D. Vt. 2013) ...............................................................10, 21, 24

*In re Beacon Assocs. Litig.*,
    282 F.R.D. 315 (S.D.N.Y. 2012) ......................................................................20

*Bondi* v. *New Rochelle Hotel Assocs.*,
    2018 WL 7246962 (S.D.N.Y. Dec. 7, 2018) .....................................................10

*Brooklyn Ctr. of Indep. of the Disabled* v. *Bloomberg*,
    290 F.R.D. 409 (S.D.N.Y. 2012) ......................................................................10

*Brown* v. *Nat'l Life Ins. Co.*,
    2013 WL 12096508 (C.D. Cal. Oct. 15, 2013) .................................................21

*Callari* v. *Blackman Plumbing Supply, Inc.*,
    307 F.R.D. 67 (E.D.N.Y. 2015) ........................................................................16

*Carr* v. *Int'l Game Tech.*,
    2012 WL 909437 (D. Nev. Mar. 16, 2012) ..................................................20, 21

*Cent. States S.E. & S.W. Areas Health & Welfare Fund* v. *Merck-Medco Managed Care, LLC*,
    504 F.3d 229 (2d Cir. 2007) .............................................................................13

*Chavez* v. *Plan Benefit Servs., Inc.*,
    957 F.3d 542 (5th Cir. 2020) ...........................................................................21

*Chen-Oster* v. *Goldman, Sachs & Co.*,
    449 F. Supp. 3d 216 (S.D.N.Y. 2020) ..........................................................18, 19

*In re Citigroup Pension Plan ERISA Litig.*,
    241 F.R.D. 172 (S.D.N.Y. 2006) ......................................................................23

*Coan* v. *Kaufman*,
    457 F.3d 250 (2d Cir. 2006) .............................................................................13

*Comcast Corp.* v. *Behrend*,
569 U.S. 27 (2013)................................................................................................19

*Cooper* v. *Ruane Cunniff & Goldfarb*,
990 F.3d 173 (2d Cir. 2021)................................................................................18

*Denney* v. *Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)..................................................................2, 8, 9, 14

*Doe* v. *Karadzic*,
192 F.R.D. 133 (S.D.N.Y. 2000) ........................................................................24

*In re First Am. Corp. ERISA Litig.*,
258 F.R.D. 610 (C.D. Cal. 2009) ........................................................................23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009)..................................................................................13

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
407 F. Supp. 3d 422 (S.D.N.Y. 2019)................................................................14

*Fuller* v. *SunTrust Banks, Inc.*,
2018 WL 3949698 (N.D. Ga. June 27, 2018) ....................................................15

*Great-West Life & Annuity Ins. Co.* v. *Knudson*,
534 U.S. 204 (2002)............................................................................................21

*Healthcare Strategies, Inc.* v. *ING Life Ins. & Annuity Co.*,
2012 WL 10242276 (D. Conn. Sept. 27, 2012)......................................21, 22, 23

*In re Initial Pub. Offerings Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006)....................................................................................7

*Intel Corp. Inv. Policy Comm.* v. *Sulyma*,
140 S. Ct. 768 (2020)..........................................................................................17

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
2017 WL 1273963 (S.D.N.Y. Mar. 31, 2017) ....................................................20

*Jacobs* v. *Verizon Commc'ns Inc.*,
2020 WL 4601243 (S.D.N.Y. June 1, 2020) ......................................................25

*Johnson* v. *Nextel Commc'ns Inc.*,
780 F.3d 128 (2d Cir. 2015)..................................................................................7

*Junod* v. *NWP Servs. Co.*,
2016 WL 6306030 (C.D. Cal. July 18, 2016) ......................................................9

*Kanawi* v. *Bechtel Corp.*,
   254 F.R.D. 102 (N.D. Cal. 2008)........................................................................23

*Kempner* v. *Town of Greenwich*,
   249 F.R.D. 15 (D. Conn. 2008)............................................................................9

*Krueger* v. *Ameriprise Fin., Inc.*,
   304 F.R.D. 559 (D. Minn. 2014)..................................................................10, 23

*Langbecker* v. *Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007) ..............................................................................23

*LaRue* v. *DeWolff, Boberg & Associates*,
   552 U.S. 248 (2008).............................................................................................20

*Long Island Head Start Child Dev. Servs., Inc.* v. *Econ. Opportunity Comm'n*
   *of Nassau Cty., Inc.*,
   710 F.3d 57 (2d Cir. 2013)...................................................................................11

*Mechigian* v. *Art Capital Corp.*,
   612 F. Supp. 1421 (S.D.N.Y. 1985).....................................................................14

*Moreno* v. *Deutsche Bank Americas Holding Corp.*,
   2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017).........................................2, 10, 11, 20

*Nelson* v. *IPALCO Enters., Inc.*,
   2003 WL 23101792 (S.D. Ind. Sept. 30, 2003) ...................................................25

*Oakley* v. *Verizon Commc'ns Inc.*,
   2012 WL 335657 (S.D.N.Y. Feb. 1, 2012)...........................................................22

*Olean Wholesale Grocery Coop., Inc.* v. *Bumble Bee Foods LLC*,
   993 F.3d 774 (9th Cir. 2021) ................................................................................8

*Ortiz* v. *Fibreboard Corp.*,
   527 U.S. 815 (1999).............................................................................................24

*Pantoja* v. *Edward Zengel & Son Exp., Inc.*,
   2011 WL 7657382 (S.D. Fla. Aug. 5, 2011).........................................................21

*Patterson* v. *Morgan Stanley*,
   2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ...................................................13, 14

*In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*,
   827 F.3d 223 (2d Cir. 2016).............................................................................14, 17

*Rambarran* v. *Dynamic Airways, LLC*,
   2015 WL 4523222 (S.D.N.Y. July 27, 2015)........................................................23

*Ret. Bd. of the Policemen's Annuity & Ben. Fund* v. *Bank of N.Y. Mellon*,
   775 F.3d 154 (2d Cir. 2014)..........................................................................15

*Richards* v. *Delta Air Lines, Inc.*,
   453 F.3d 525 (D.C. Cir. 2006) .....................................................................22

*Robinson* v. *Metro-N. Commuter R.R. Co.*,
   267 F.3d 147 (2d Cir. 2001)..........................................................................22

*Rodriguez* v. *It's Just Lunch Int'l*,
   2018 WL 3733944 (S.D.N.Y. Aug. 6, 2018) ................................................25

*Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Tr. Co.*,
   2017 WL 1331288 (S.D.N.Y. Apr. 4, 2017)..................................................10

*Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Tr. Co.*,
   2018 WL 1750595 (S.D.N.Y. Apr. 11, 2018) ............................................3, 17

*Ruiz* v. *Citibank, N.A.*,
   2015 WL 4629444 (S.D.N.Y. Aug. 4, 2015)..................................................10

*S.C. Johnson & Son, Inc.* v. *Clorox Co.*,
   241 F.3d 232 (2d Cir. 2001)..........................................................................24

*Sacerdote* v. *N.Y. Univ.*,
   2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) ................................................23

*Segal* v. *Bitar*,
   2015 WL 3644479 (S.D.N.Y. May 26, 2015) ...............................................21

*Spano* v. *Boeing Co.*,
   633 F.3d 574 (7th Cir. 2011) ...................................................................15, 16

*Thole* v. *U.S. Bank N.A.*,
   140 S. Ct. 1615 (2020)................................................................................8, 11

*Thorne* v. *U.S. Bancorp*,
   2021 WL 1977126 (D. Minn. May 18, 2021).......................................9, 10, 17, 24

*Tomassini* v. *FCA U.S. LLC*,
   326 F.R.D. 375 (N.D.N.Y. 2018)....................................................................9

*Troudt* v. *Oracle Corp.*,
   325 F.R.D. 373 (D. Colo. 2018) ...............................................................15, 25

*In re UBS ERISA Litig.*,
   2014 WL 4812387 (S.D.N.Y. Sept. 29, 2014).............................................9, 11

*Wal-Mart Stores, Inc.* v. *Dukes*,
    564 U.S. 338 (2011)....................................................................................... *passim*

*Williams* v. *Imhoff*,
    203 F.3d 758 (10th Cir. 2000) ...................................................................18

**Statutes**

29 U.S.C. § 1106(b)(3) ...........................................................................................12

29 U.S.C. § 1113(2) ................................................................................................17

29 U.S.C. § 1132(a) ................................................................................................11

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................................... *passim*

42 Fed. Reg. 18,734, 18,734-35 (Apr. 8, 1977) .........................................13

## PRELIMINARY STATEMENT

In this putative ERISA class action, Plaintiff's central claim is that class members were injured by the availability of five "proprietary" mutual funds managed by Goldman Sachs Asset Management ("GSAM") as investment options for The Goldman Sachs 401(k) Plan (the "Plan") between 2013 and 2017 rather than other supposedly "superior alternatives."  That disputed factual issue is pivotal to assessing whether each proposed class member suffered injury-in-fact and whether Rule 23's requirements are satisfied.  Yet Plaintiff has elected not to submit any evidence on how he intends to prove injury to the class.  His brief instead relies largely on rote recitations of Rule 23's requirements and citations to district court decisions involving different retirement plans with different investment options and differently situated class representatives.  Indeed, if a class could be certified here based on Plaintiff's meager evidentiary showing, class certification, in effect, would be automatic in all ERISA cases, which no court has ever held.  Making matters worse, Plaintiff seeks to certify a mandatory, no opt-out class under Rule 23(b)(1), thus depriving absent class members whose claim for damages will depend on Plaintiff's undisclosed selection of comparator funds of both notice and the right to opt out of any certified class and pursue their own individual claim for damages.

Despite seeking to certify a class of over ███ Plan participants, the only evidence Plaintiff cites *in support of class certification* is (i) his own conclusory declaration, (ii) a document related to the size of the class, and (iii) a declaration from Plaintiff's lawyers describing their qualifications.  (Pl.'s Br. (ECF No. 83) 16, 21-22.)  On the disputed Rule 23 issues, Plaintiff's motion rests entirely on his two-page declaration, only two paragraphs of which are relevant to his investments in the Plan.  (Falberg Decl. (ECF No. 85) ¶¶ 2, 3.)  Most significantly, Plaintiff elected not to submit any expert evidence demonstrating injury to himself and the class based on the availability of the five GSAM funds as Plan investment options.  In seeking class certification in

*Moreno* v. *Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *2 (S.D.N.Y. Sept. 5, 2017)—a case cited *passim* in Plaintiff's brief—Plaintiff's own lawyers submitted an expert report from Dr. Steven Pomerantz purporting to show that the proprietary funds at issue in that case charged higher fees and performed worse than comparator funds he identified. Plaintiff made a strategic decision not to submit similar expert evidence in this case. Without such evidence, Plaintiff cannot meet his burden to prove class-wide standing and satisfy Rule 23's requirements.

**Class-Wide Standing.** It is well-settled that "no class may be certified that contains members lacking Article III standing." *Denney* v. *Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006). Yet Plaintiff does not even attempt to prove, through expert evidence or otherwise, that the thousands of class members he seeks to represent suffered injury-in-fact fairly traceable to the availability of the five GSAM funds as Plan investment options. Indeed, his class-certification papers are utterly silent on which comparator funds should be used to prove injury. As Defendants' expert Dr. Kristen Willard demonstrates, even using the cherry-picked alternatives alleged in the Complaint, as many as ▮▮▮ Plan participants (or ▮▮▮% of the putative class) would have been *worse off* had they invested in the Complaint's proposed alternatives rather than the GSAM funds. Those participants suffered no injury-in-fact. The Court should not permit Plaintiff simply to shirk the issue of class-wide standing at the class-certification stage by not offering *any* methodology for proving injury-in-fact. Class certification should be denied for this reason alone.

**Rule 23(a).** Plaintiff does not prove that he is an adequate representative of other Plan participants who invested in the challenged GSAM funds or that his claims are typical of those of other class members. Plaintiff did not invest in two of the five GSAM funds and thus cannot represent Plan participants who invested in those two funds. Plaintiff also does not have an interest in vigorously pursuing claims based on two additional challenged funds because he was invested

in them for just two months (4% of the relevant period) and incurred, at most, negligible damages on those investments.  Plaintiff's interests are antagonistic to those of other class members with respect to at least one of the challenged funds because he made more money by investing in that fund than he would have made by investing in one of the Complaint's supposedly "superior alternatives."  If the Complaint's other proposed alternative is used to calculate alleged damages, Plaintiff would have a small damages claim, but ▮ class members then would *lose* their damages claim.  This illustrates how the selection of comparator funds creates irreconcilable intra-class conflicts here.  Plaintiff seeks to hide from these conflicts by offering no expert testimony on the appropriate comparator funds, which defeats his showing under Rule 23(a).

Plaintiff also offers "no reliable means of collectively determining how many class members' claims are time-barred" under ERISA's three-year statute of limitations.  *Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Tr. Co.*, 2018 WL 1750595, at *16 (S.D.N.Y. Apr. 11, 2018).  The timeliness of each class member's claims turns on when he or she obtained "actual knowledge" of the alleged violations based on Plan disclosures or otherwise.  Plaintiff makes no showing that his "actual knowledge" is typical of that of other proposed class members.

Plaintiff further ignores that thousands of putative class members agreed to arbitrate any dispute with Goldman Sachs.  Plan participants who are contractually obligated to arbitrate their claims should be excluded from any certified class.

**Rule 23(b).**  Even if Plaintiff could meet his Rule 23(a) burden, he falls far short of satisfying Rule 23(b).  Plaintiff seeks to certify a mandatory, no opt-out class under Rule 23(b)(1).  The Supreme Court has held, however, that "individualized monetary claims belong in Rule 23(b)(3)" because it provides for notice and the right to opt out.  *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 362 (2011).  As the Court explained, "[i]n the context of a class action

*predominantly* for money damages," the "absence of notice and opt out violates due process." *Id.* at 363 (emphasis added). Because the five GSAM mutual funds at issue here were removed as Plan investment options more than two years before this action was filed, Plaintiff's claims are "predominantly for money damages," notwithstanding his attempt to dress them up in equitable garb. Given that Plaintiff's selection of comparator funds will dictate the existence and magnitude of class members' potential damages claim, as a matter of basic fairness, absent class members should receive notice of how Plaintiff proposes to prove injury and an opportunity to opt out before being bound by any judgment in this case—which confirms that Rule 23(b)(1) cannot apply here. Plaintiff does not even attempt to show that class certification is appropriate under Rule 23(b)(3).

**Class Definition.** Plaintiff's proposed class definition is overbroad because it sweeps in Plan participants who invested in "any Goldman Sachs mutual fund" (not just the five challenged GSAM funds) and does not include an end date (which should be June 6, 2017).

## BACKGROUND

### A.   Plaintiff's Claims and the Proposed Class

Goldman Sachs sponsors a defined contribution 401(k) Plan for eligible employees. (Ex. 1 (The Goldman Sachs 401(k) Plan) at 1122-40; Ex. 2 (2016 Summary Plan Description) at 59.)[1] In investing their accounts, participants can choose among the many investment options selected by The Goldman Sachs 401(k) Plan Retirement Committee ("Committee"). (*Id.*) Throughout the relevant period, ███████████████████████████████████████████████████████ ████████████████████████████████████████████████ (*See* Pl.'s Br. 3.)

---

[1] Unless otherwise stated, all citations to "Ex." refer to exhibits to the accompanying declaration of Richard C. Pepperman II. The "GS" Bates-number prefix and zeros have been omitted from page references. Unless otherwise stated, all internal quotation marks are omitted from citations.

Plaintiff contends that the Committee violated ERISA by failing to remove five GSAM mutual funds as Plan investment options: (i) the Mid Cap Value Fund, (ii) the Large Cap Value Fund, (iii) the High Yield Fund, (iv) the Core Fixed Income Fund, and (v) the Short Duration Government Fund. (Compl. (ECF No. 1) ¶¶ 48, 88-95.) The Committee removed all five of those funds as investment options by June 6, 2017—more than two years before this case was filed.[2]

### B.     The Committee's Exercise of Its Fiduciary Responsibilities

Plaintiff devotes much of his brief to arguing that Defendants breached their fiduciary duties under ERISA. (Pl.'s Br. 4-14.) In fact, the Committee ably fulfilled all of its responsibilities, providing Plan participants with dozens of investment options in multiple different categories. (Ex. 3 (Dec. 2014 Monthly Rpt.) at 1249.) In each category in which a GSAM mutual fund was offered, the Committee also offered participants at least one other non-GSAM option. The Committee also hired an experienced investment advisor, Rocaton Investment Advisors, LLC ("Rocaton"), to advise it on investment options. The Committee received monthly and quarterly reports on each option's performance, regularly met with Rocaton to discuss performance, and received detailed presentations from Rocaton. (*See id.*; Ex. 4 (Mar. 31, 2013 Quarterly Rpt.); Ex. 5 (Sept. 29, 2016 Meeting Minutes); Ex. 6 (Dec. 5, 2016 Quarterly Presentation).)



(Willard Decl. ¶ 40 & Exs. 10A-10E.)

---

[2] The Large Cap Value, Mid Cap Value, Core Fixed Income and Short Duration Government Funds were removed on April 4, 2017, and the High Yield Fund was removed on June 6, 2017. (Ex. 7 (Mar. 2, 2017 Email) at 1051; Ex. 8 (May 5, 2017 Email) at 9543.)



(*Id*. Ex. 10B; *see* Ex. 4 (Mar. 31, 2013 Quarterly Rpt.) at 7255.)

(Willard Decl. ¶ 40 & Ex. 9; *see* Ex. 9 (Apr. 2016 Monthly Rpt.) at 1396.)

(Willard Decl. Ex. 9.)

(*Id*.)

The Committee acted promptly in response to this information on the GSAM funds' performance.  It discussed the Mid Cap and Large Cap Value Funds at its September 29, 2016 meeting and again at an October 25, 2016 *ad hoc* meeting, less than a year after the first of those funds began exhibiting multiple consecutive months of underperformance.  (Ex. 5 (Sept. 29, 2016 Meeting Minutes) at 3812; Ex. 10 (Oct. 25, 2016 Meeting Minutes) at 3814-15.)  The Committee discussed all of the GSAM funds at its December 5, 2016 meeting, when Rocaton recommended their removal.  (Ex. 6 (Dec. 5, 2016 Rocaton Presentation) at 4002-03.)  The Committee voted to remove the GSAM funds at its meetings on December 5, 2016 and April 3, 2017.  (Ex. 11 (Dec. 5, 2016 Meeting Minutes) at 4884; Ex. 12 (Apr. 3, 2017 Meeting Minutes) at 4550.)

**C.    Plaintiff's Investments in Three of the GSAM Mutual Funds**

Plaintiff worked as a technology analyst at Goldman Sachs from 1999 to 2008—five years before the start of the proposed class period and eleven years before he filed this action.  (Ex. 13

(Falberg Dep.) at 27:03–05; 28:05–08.)  Since leaving Goldman Sachs, Plaintiff has elected to keep his balance in the Plan rather than moving it to an IRA or another corporate retirement plan. (*Id*. at 45:24–46:1; 51:03–53:21; Willard Decl. ¶¶ 26-27.)

At his deposition, Plaintiff could not recall which GSAM mutual funds he had invested in or for what time period.  (Ex. 13 (Falberg Dep.) at 86:6–89:21.)  The evidence shows, however, that Plaintiff never invested in two of the five GSAM mutual funds at issue:  the Core Fixed Income and Short Duration Government Funds.  (Willard Decl. ¶ 21 & Exs. 2-3.)  With respect to the other three, Plaintiff was invested in two (the Large Cap Value and High Yield Funds) for just two months (*id*. ¶ 22), and he did not invest in the High Yield Fund until April 5, 2017 (*id*.)—after the Committee had voted to remove it as an investment option.  (*See id*. ¶ 20 & Exs. 2-3.)

## ARGUMENT

A plaintiff seeking class certification must "affirmatively demonstrate" compliance with Rule 23's "stringent" requirements.  *See Am. Express Co.* v. *Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013); *Wal-Mart*, 564 U.S. at 350.  Because Rule 23 "does not set forth a mere pleading standard," *Wal-Mart*, 564 U.S. at 350, a plaintiff seeking class certification "bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements ha[s] been met." *Johnson* v. *Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).  Before certifying a class, a "district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied" that the plaintiff has carried this evidentiary burden.  *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).  A class may be certified "only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established." *Id*.  Plaintiffs' motion here should be denied based on his complete failure of proof.

## I.     Plaintiff Has Not Carried His Evidentiary Burden to Prove Class-Wide Standing.

In this Circuit, "no class may be certified that contains members lacking Article III standing." *Denney*, 443 F.3d at 264.[3]  To establish Article III standing, a plaintiff must prove "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole* v. *U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020).  Plaintiff here fails to satisfy his burden to prove class-wide standing because he offers no methodology for proving injury to the class.  His motion should be denied for that reason alone.

### A.     Plaintiff's Proposed Class Includes Many Uninjured Plan Participants.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████ (Pl.'s Br. 5-6.)  Plaintiff's claim of injury thus requires a comparison between the performance of the five GSAM funds and that of other supposedly "superior alternatives" (Compl. ¶ 57) during the proposed class period.  In his Complaint, Plaintiff cherry-picked "examples of superior marketplace alternatives to Goldman Sachs funds" (*id.*)—identifying other mutual funds with similar strategies that, in hindsight, outperformed the GSAM funds.  At the class-certification stage, however, Plaintiff elected to submit *no evidence* of the appropriate comparator funds.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[3] Even Circuits that consider certification of a class containing a *de minimis* "percentage of uninjured class members" recognize that "5% to 6% constitutes the outer limits of a *de minimis* number."  *Olean Wholesale Grocery Coop., Inc.* v. *Bumble Bee Foods LLC*, 993 F.3d 774, 792 (9th Cir. 2021); *see also In re Asacol Antitrust Litig.*, 907 F.3d 42, 47, 51-58 (1st Cir. 2018) (reversing class certification where "around 10%" of proposed class was uninjured).

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████  (Willard Decl. ¶¶ 31-33 & Exs. 5-6.)  The Complaint also asserts

that "low-cost index funds . . . would have offered superior performance at a lower cost" than the

GSAM funds.  (Compl. ¶ 59.)  ████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████  (Willard Decl. ¶ 35.)  The thousands of proposed

class members who would have been *worse off* had they invested in one of the Complaint's

supposedly "superior alternatives" did not suffer any "injury-in-fact flowing from [their]

investment," and therefore "lack[] standing to sue under ERISA."  *In re UBS ERISA Litig.*, 2014

WL 4812387, at *8 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom. Taveras* v. *UBS AG*, 612 F. App'x

27 (2d Cir. 2015).  If "a plaintiff's class definition includes a significant number of individuals

who do not have standing, a court must deny the motion for class certification."  *Tomassini* v. *FCA*

*U.S. LLC*, 326 F.R.D. 375, 386-87 (N.D.N.Y. 2018) (denying class certification).[4]

Just last month, a Minnesota district court denied class certification in an ERISA case

because "potential class members lack Article III standing."  *Thorne* v. *U.S. Bancorp*, 2021 WL

1977126, at *2 (D. Minn. May 18, 2021).  After evaluating the six alternative models submitted

by plaintiffs' expert, the court found that none of the models "results in higher benefits for all class

members and [that] each model results in lower benefits for some class members."  *Id*.  As a result,

---

[4] *See also Junod* v. *NWP Servs. Co.*, 2016 WL 6306030, at *6 (C.D. Cal. July 18, 2016) (denying class certification "where class definitions include both harmed and unharmed members"); *Kempner* v. *Town of Greenwich*, 249 F.R.D. 15, 17 (D. Conn. 2008) ("[T]he court finds that the proposed class cannot be certified because it contains members who do not have standing under Article III of the Constitution.") (citing *Denney*, 443 F.3d at 263).

"some potential class members' benefits would decrease using each of [plaintiffs'] models," and 251 class members "are not injured" at all. *Id*. The court stressed that "[e]very member of the class must have standing." *Id*. "Because some potential class members lack Article III standing," the court held that "the class cannot be certified." *Id*.

Even after Defendants raised this standing issue in response to Plaintiff's pre-motion letter (ECF No. 79), Plaintiff chose to ignore it, submitting no expert testimony on the question of class-wide injury. Plaintiff did not even attempt to limit his proposed class to injured Plan participants by including an express "and who were injured thereby" limitation in his class definition, as other courts in ERISA cases have required.[5] Even that generic limitation, however, would not suffice here because Plaintiff has not offered any methodology for proving injury to the class, much less identified specific comparator funds to use in assessing the GSAM funds' performance. Without this evidence, it is impossible to know which Plan participants suffered alleged injury—and therefore which can be proper class members—until *after* a final liability determination, creating the risk of an impermissible "fail-safe" class. *Bondi* v. *New Rochelle Hotel Assocs.*, 2018 WL 7246962, at *13 (S.D.N.Y. Dec. 7, 2018) (such classes are "unmanageable because the members of the class could only be known after a determination of liability"), *adopted* 2019 WL 464821 (S.D.N.Y. Feb. 6, 2019).[6]

---

[5] *See, e.g., Moreno*, 2017 WL 3868803, at *11; *Royal Park Invs. SA/NV* v. *Deutsche Bank Nat'l Tr. Co.*, 2017 WL 1331288, at *11 (S.D.N.Y. Apr. 4, 2017); *Krueger* v. *Ameriprise Fin., Inc.*, 304 F.R.D. 559, 579 (D. Minn. 2014); *Bauer-Ramazani* v. *Teachers Ins. & Annuity Ass'n of Am.*, 290 F.R.D. 452, 462 (D. Vt. 2013).

[6] *See also Ruiz* v. *Citibank, N.A.*, 2015 WL 4629444, at *7 (S.D.N.Y. Aug. 4, 2015) (affirming denial of "fail-safe" classes because they "require an adjudication of the merits of each individual's claim to determine whether they are within the class"), *aff'd*, 687 F. App'x 39 (2d Cir. 2017); *Brooklyn Ctr. of Indep. of the Disabled* v. *Bloomberg*, 290 F.R.D. 409, 420 (S.D.N.Y. 2012) ("Using a future decision on the merits to specify the scope of the class makes it impossible to determine who is in the class until the case ends.").

Lastly, Plaintiff argues that his claims are nominally brought "on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)."  (Pl.'s Br. 14.)  But "[t]here is no ERISA exception to Article III."  *Thole*, 140 S. Ct. at 1622.  Plan participants who "have not sustained any monetary injury" have "no concrete stake in this dispute and therefore lack Article III standing."  *Id*. at 1618, 1622; *see also Taveras*, 612 F. App'x at 29 ("An ERISA plan participant lacks standing to sue for ERISA violations that cause injury to a plan but not individualized injury to the plan participant."). The cases cited by Plaintiff (Pl.'s Br. 19-20, 23-25) pre-date *Thole* and also are distinguishable because (i) the plaintiffs alleged excessive recordkeeping fees (which is not alleged here), *see*, *e.g.*, *Moreno*, 2017 WL 3868803, at *5, or (ii) they involved a *defined benefit* plan, which is different from a *defined contribution* plan like the Plan here, *see*, *e.g.*, *Long Island Head Start Child Dev. Servs., Inc.* v. *Econ. Opportunity Comm'n of Nassau Cty., Inc.*, 710 F.3d 57, 65 (2d Cir. 2013).[7]

**B.    Plaintiff Fails to Prove Any Class-Wide Injury Unrelated to Performance.**

████████████████████████████████████████████████████████████████

████████████████████████████████████  (Pl.'s Br. 12.)  Plaintiff has not proven these alternative sources of alleged injury by a preponderance of the evidence.

████████████████████████████████████████████████████████████

██████████████████████████████  (*Id*. at 13.)  ██████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[7] Because participants in a defined benefit plan are guaranteed retirement benefits paid from a commingled pool of assets, "each participant's financial fortune [is] tied to the plan's overall success (or failure)."  *In re UBS*, 2014 WL 4812387, at *6-7.  By contrast, participants in a defined contribution plan make contributions to individual accounts and direct their own investments.  As a result, any alleged fiduciary breach with respect to specific investment options affects only participants who invested in those options.  *Id*.

██████████████████████████████████████████  (Ex. 14 (June 2016 401(k) &

Pension Plan Fee Review) at 2271; *see also* Ex. 15 (██████ Dep.) at 103:09–11 ("It was certainly

a normal course of our business to look at expense ratios and fees and to get the best deal we

could.").)   Plaintiff speculates that "[g]iven the size of the Plan, it was in a good position to

negotiate fees."  (Pl.'s Br. 13.)  But Anne Buehl of Rocaton rejects that speculation, explaining

that the Plan could not negotiate lower fees for the five GSAM funds compared to fees that other

investors in those same funds paid.  (Buehl Decl. ¶ 5.)

████████████████████████████████████████████████████

████████████████████████████████████████████  (Pl.'s Br. 13.)

The evidence again belies that contention, showing that no such revenue-sharing payments were

available for the GSAM funds in the Plan under GSAM's agreement with the Plan's recordkeeper

because the Plan opened its accounts with GSAM before April 1, 2009.  (Ceder Decl. ¶ 4 & Ex. 1

at 5 (████████████████████████████████████████████████

████████████████████████).)  The Plan's recordkeeper thus never received any payments from

GSAM that could have been subject to rebate to the Plan.  Had revenue sharing opportunities from

GSAM been available to the Plan's recordkeeper, Rocaton would have recommended that the

Committee seek to obtain them.  (Buehl Decl. ¶ 6.)  There is no evidence that they were available.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████  (Pl.'s Br. 12.)  The evidence shows, however, that the Plan could not offer separately

managed accounts that pay GSAM a fee because any payments to GSAM would have constituted

a "prohibited transaction" under ERISA.  29 U.S.C. § 1106(b)(3).  Because the Department of

Labor has issued an exemption that permits financial institutions to offer their own mutual funds,

the Plan offered mutual fund versions of the investments. *See* Prohibited Transaction Exemption 77-3, 42 Fed. Reg. 18,734, 18,734-35 (Apr. 8, 1977). There is no similar exemption for separately managed accounts. *See Patterson* v. *Morgan Stanley*, 2019 WL 4934834, at \*9 (S.D.N.Y. Oct. 7, 2019). The Plan thus "could not invest in a separately managed account and pay . . . [GSAM] a fee." (Ex. 16 (████ Dep.) at 86:14–19.)[8] Anne Buehl of Rocaton explains that there was no indication that GSAM was willing to offer these asset-management services to the Plan free of charge. (Buehl Decl. ¶ 5.) Moreover, "Rocaton did not identify and is not aware of any [collective trusts] offered by GSAM that used investment strategies that were substantially similar to those used by the five GSAM mutual funds" and that therefore could have served as alternative investment options. (*Id.*)

## II.    Plaintiff Has Not Carried His Evidentiary Burden Under Rule 23(a).

To certify a class in an ERISA action, a plan participant still must satisfy all of Rule 23's requirements. *See Coan* v. *Kaufman*, 457 F.3d 250, 259-61 (2d Cir. 2006). Under Rule 23(a), Plaintiff must prove by a "preponderance of the evidence" that his claims "are typical of the claims . . . of the class" and that he "will fairly and adequately protect the interests of the class." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 34-35 (2d Cir. 2009). To satisfy Rule 23(a)(3)'s typicality requirement, Plaintiff must prove that his claims "arise[] from the same course of events" as other class members' claims and that "each class member makes similar legal arguments to prove the defendant's liability." *Cent. States S.E. & S.W. Areas Health & Welfare Fund* v. *Merck-Medco Managed Care, LLC*, 504 F.3d 229, 245 (2d Cir. 2007). To satisfy

---

[8] ████████████████████████████████████████████████████████████

Rule 23(a)(4)'s adequacy requirement, Plaintiff must prove that he "ha[s] an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney*, 443 F.3d at 268. "[T]he requirement of adequate representation must be stringently applied," *Mechigian* v. *Art Capital Corp.*, 612 F. Supp. 1421, 1433 (S.D.N.Y. 1985), and class certification should be denied if there are "concerns about conflicts of interest between class representatives and class members," *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 438-40 (S.D.N.Y. 2019). Plaintiff has not satisfied his evidentiary burden on either requirement.

### A. Plaintiff Ignores the Details of His Own Investments and the Fundamental Intra-Class Conflicts Created by the Selection of Comparator Funds.

In his declaration, Plaintiff simply asserts that he "was invested in multiple Goldman Sachs funds, including the Goldman Sachs High Yield Fund, The Goldman Sachs Large Cap Value Fund, and the Goldman Sachs Mid Cap Value Fund." (Falberg Decl. ¶ 3.) For good reason, however, he provides no details about his investments. Those details reveal that Plaintiff is an inadequate class representative and that his claims are atypical of those of the proposed class.

"To assure vigorous prosecution" of class members' claims, "courts consider whether the class representative has adequate incentive to pursue the class's claim, and whether some difference between the class representative and some class members might undermine that incentive." *In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016). Here, "the evidence that Plaintiff[] will have to put forward to establish liability will vary from fund to fund." *Patterson*, 2019 WL 4934834, at *6. Based on the details of his investments, Plaintiff lacks an adequate incentive to pursue the proposed class's clams based on at least four of the five challenged funds. More broadly, he ignores fundamental intra-class conflicts created by the selection of comparator funds that defeat his showing under Rule 23(a).

First, Plaintiff *never* invested in two of the five GSAM mutual funds at issue here—the Core Fixed Income and Short Duration Government Funds.  (Willard Decl. ¶ 21.)  Plaintiff therefore lacks standing to assert claims based on those two funds.  *See Ret. Bd. of the Policemen's Annuity & Ben. Fund* v. *Bank of N.Y. Mellon*, 775 F.3d 154, 159 (2d Cir. 2014) ("Plaintiffs lack standing to assert claims . . . related to trusts in which they did not invest.").  Moreover, in denying Defendants' motion to dismiss, the Court recognized that Plaintiff's investment in only "three of the five proprietary funds at issue" also may be relevant to "Rule 23 class certification."  (ECF No. 43 at 14-16.)  Under Rule 23(a), a class representative "at a minimum" must "have invested in the same funds as the class members."  *Spano* v. *Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011).  Plaintiff thus cannot satisfy Rule 23(a) for mutual funds in which he never invested.  *See Troudt* v. *Oracle Corp.*, 325 F.R.D. 373, 381 (D. Colo. 2018) ("Where no named class representative is or was invested in the PIMCO Fund, I cannot be adequately assured that the interests of the absent PIMCO investors will be sufficiently protected."); *Fuller* v. *SunTrust Banks, Inc.*, 2018 WL 3949698, at *7 (N.D. Ga. June 27, 2018) (dividing ERISA action into "separate classes for each fund" to ensure that "[e]ach class will be represented by one or more named Plaintiffs who invested in the fund at issue").

Second, Plaintiff was invested in two of the other challenged funds (the Large Cap Value and High Yield Funds) for only two months of the 43-month period at issue here.  (Willard Decl. ¶ 22 & Ex. 2.)[9]  Because the timing of Plaintiff's investments is likely to "become the focus of cross-examination and unique defenses at trial" that would not apply to other class members,

---

[9] Based on monthly trading data, Defendants' pre-motion letter stated that Plaintiff was invested in those funds for one month.  (ECF No. 79.)  Dr. Willard's analysis, however, is based on daily trading data for Plaintiff, which show that he was invested in those funds for two months. (Willard Decl. ¶ 20 nn.9-10.)  The difference between monthly and daily trading data also explains other disparities between Dr. Willard's numbers and those previously discussed by Defendants.

Plaintiff does "not satisfy the adequacy prong" of Rule 23(a). *Callari* v. *Blackman Plumbing Supply, Inc.*, 307 F.R.D. 67, 79 (E.D.N.Y. 2015). For example, Plaintiff did not invest in the High Yield Fund until April 5, 2017, the very end of the proposed class period *after* the Committee already had voted to remove that fund as a Plan investment option. (Willard Decl. ¶ 20.) When he invested in the High Yield Fund, Plaintiff had available to him ample information about that fund's performance over the last several years but nevertheless chose to invest in it.



(Willard Decl. ¶ 29 & Ex. 4; Compl. ¶¶ 57-58.)

(Willard Decl. ¶ 29 & Ex. 4.)

(*Id.*)

[10]

Fourth, as the above illustrates, Plaintiff has a strong incentive to select comparator funds that will maximize his own damages claim, even if those comparators disadvantage those of other class members. This creates irreconcilable intra-class conflicts that defeat class certification. *See Spano*, 633 F.3d at 591 (where class includes "a fund that turns out to be an imprudent investment over a particular time for one participant [but] a fine investment for another participant . . . [,] a

---

[10] ████████████████████████████████████████
████████████████████████████████████ (Willard Decl. ¶ 30
& Ex. 4; Compl. ¶¶ 57-58.)

conflict will result and class treatment will become untenable"). ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ (Willard Decl. ¶ 39 & Ex. 4.) ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████ (*Id.* ¶¶ 36-39 & Exs. 4, 8.)  Such a "fundamental conflict that goes to the very heart

of the litigation" precludes a finding of adequacy of representation.  *In re Payment Card*, 827 F.3d

at 231; *see also Thorne*, 2021 WL 1977126, at *2 (where "the relief sought would harm some class

members," a "fundamental conflict" exists that "defeat[s] adequacy").  Similar conflicts inevitably

exist with respect to the other four GSAM funds.  Plaintiff attempts to hide from these conflicts

by submitting *no evidence* on the appropriate comparator funds.  Without such evidence, however,

he cannot prove that he is an adequate class representative.

### B.    Plaintiff Ignores ERISA's Three-Year Statute of Limitations.

Plaintiff offers "no reliable means of collectively determining how many class members'

claims are time-barred."  *Royal Park Invs.*, 2018 WL 1750595, at *16.  ERISA has a three-year

statute of limitations that begins to run when a participant "had actual knowledge of the breach or

violation." 29 U.S.C. § 1113(2).  The Supreme Court recently addressed whether a plaintiff has

"actual knowledge" of "information contained in disclosures that he receives but does not read or

cannot recall reading."  *Intel Corp. Inv. Policy Comm.* v. *Sulyma*, 140 S. Ct. 768, 773 (2020).

Applying Section 1113(2)'s plain language, the Court held that "to have 'actual knowledge' of a

piece of information, one must in fact be aware of it."  *Id*. at 776.  There is no way of knowing—

short of thousands of mini-trials that would defeat the predominance of common questions under

Rule 23(b)(3)—which discloses each proposed class member read and thus when each acquired "actual knowledge" of the alleged violations.  Plaintiff presents no evidence that his practice of reviewing only the summary pages on the Plan's website (Ex. 13 (Falberg Dep.) at 52:13–20; 54:12–14) is typical of that of other class members, including the many sophisticated Goldman Sachs financial professionals included in his proposed class.

### C.   Plaintiff Ignores Plan Participants' Arbitration Agreements.

Plaintiff's claims also are not typical because thousands of putative class members agreed to arbitrate all disputes with Goldman Sachs through their FINRA Form U4 or their Separation Agreements.  Under the FINRA Form U4, thousands of class members agreed to "arbitrate *any dispute, claim or controversy* that may arise between me and my firm."  (Ex. 18 (Form U4) at 15 (emphasis added).) ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████   (Ex. 19 (Separation Agreement) § 9.1 (emphasis added).)  These broad arbitration provisions plainly encompass the ERISA claims in this case.  *See Williams* v. *Imhoff*, 203 F.3d 758, 766-67 (10th Cir. 2000) (compelling arbitration of ERISA § 502(a)(2) claims based on FINRA Form U4).  The Second Circuit's decision in *Cooper* v. *Ruane Cunniff & Goldfarb*, 990 F.3d 173 (2d Cir. 2021), is not to the contrary.  In that case, the court held that the specific arbitration agreements at issue applied only to claims "relating to employment" and thus did not cover ERISA claims.  *Id*. at 175-76, 180-84.  Here, by contrast, the arbitration agreements are not limited to claims "relating to employment."[11]

---

[11] Defendants timely raised an arbitration defense in their amended answer (Am. Answer (ECF No. 75) at 23) and then provided examples of the relevant arbitration agreements at Plaintiff's requests. *See Chen-Oster* v. *Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234-36 (S.D.N.Y. 2020) (arbitration issue timely raised under those circumstances).  Defendants could not move to dismiss on this ground because Plaintiff himself is not bound by an arbitration agreement.

At a minimum, the thousands of class members who signed binding arbitration agreements should be excluded from any certified class.  If a class is certified that includes Plan participants who agreed to arbitrate any dispute with the firm, Defendants will move to compel arbitration of those class members' claims.  *See Chen-Oster*, 449 F. Supp. 3d at 234-35 ("[C]ourts repeatedly have held that the earliest time to move to compel arbitration is after class certification.").

## III.    Plaintiff Has Not Carried His Evidentiary Burden Under Rule 23(b).

Plaintiff "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."  *Comcast Corp.* v. *Behrend*, 569 U.S. 27, 33 (2013).  Although he seeks to assert claims on behalf of a class of Plan participants for monetary losses incurred by their individual accounts, Plaintiff moves to certify a mandatory, no opt-out class under Rule 23(b)(1).  Indeed, his brief "only addresses class certification under Rule 23(b)(1)."  (Pl.'s Br. 22 n.20.)[12]  Plaintiff fails to satisfy Rule 23(b)(1)'s requirements.

### A.    Claims for Money Damages Cannot Be Certified Under Rule 23(b)(1).

In *Wal-Mart*, the Supreme Court squarely held that "individualized monetary claims belong in Rule 23(b)(3)."  564 U.S. at 362.  By contrast, the Court stated that mandatory, no opt-out classes can be certified under Rule 23(b)(1) only if "individual adjudications would be impossible or unworkable."  *Id*. at 361.  In so ruling, the Supreme Court stressed the importance of Rule 23(b)(3)'s "procedural protections," namely, "predominance, superiority, mandatory notice, and the right to opt out."  *Id*. at 362.  As the Court explained, such protections are constitutionally mandated "[i]n the context of a class action *predominantly* for money damages."

---

[12] Although Plaintiff asserts in a footnote that "the proposed class also satisfies the requirements of Rule 23(b)(3) because the common questions in this case predominate and class treatment is superior" (Pl.'s Br. 22 n.20), that conclusory sentence, unsupported by argument or evidence, is insufficient to satisfy Rule 23(b)(3).

*Id*. at 363 (emphasis added).  When claims for money damages predominate, the Court emphasized that the "absence of notice and opt out [rights] violates due process."  *Id*.

Despite this ruling, some courts have continued to certify ERISA class actions under Rule 23(b)(1) on the ground that plan participants can "bring suit seeking relief for breach of fiduciary duty only when they do so in a representative capacity on behalf of the plan."  *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 342 (S.D.N.Y. 2012).  That is incorrect.  In *LaRue* v. *DeWolff, Boberg & Associates*, 552 U.S. 248, 250 (2008), the Supreme Court held that ERISA "authorizes a participant in a defined contribution pension plan to sue a fiduciary whose alleged misconduct impaired the value of plan assets in the participant's individual account."  *See also Carr* v. *Int'l Game Tech.*, 2012 WL 909437, at *7 (D. Nev. Mar. 16, 2012) (*LaRue* held that "participants in a defined contribution plan . . . can bring ERISA § 502(a)(2) claims on behalf of their own individual accounts").  *LaRue* thus made clear that individual damages actions are not "impossible or unworkable" under ERISA.  *Wal-Mart*, 552 U.S. at 361.  Because plan participants "have an individual remedy, they can pursue" damages claims "on their own behalf," and they have a due process right to notice and an opportunity to opt out before being bound by a class resolution.  *Carr*, 2012 WL 909437, at *7.

"In the wake of the Supreme Court's decisions in *LaRue* and *Wal-Mart*," courts "are split over whether [Rule 23(b)(1)] remains an appropriate class vehicle for fiduciary-breach claims under ERISA."  *Moreno*, 2017 WL 3868803, at *8.  In cases in which ERISA plaintiffs have asserted claims predominantly for money damages, however, courts have rejected certification under Rule 23(b)(1).  *See*, *e.g.*, *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2017 WL 1273963, at *13 (S.D.N.Y. Mar. 31, 2017) ("[C]ertification of the proposed class and subclasses under [Rule 23(b)(1)] would not be appropriate in light of the fact that Plaintiffs seek individual

monetary damages."); *Bauer-Ramazani*, 290 F.R.D. at 460 ("[Rule] 23(b)(3) applies because the proposed class action contains claims for individualized monetary damages."); *Healthcare Strategies, Inc.* v. *ING Life Ins. & Annuity Co.*, 2012 WL 10242276, at \*12 (D. Conn. Sept. 27, 2012) (Rule 23(b)(1) certification inappropriate because "the core relief sought in this case is disgorgement").[13]  Those decisions recognize that "[a]bsent class members have a due process right to notice and an opportunity to opt out of class litigation when the action is predominantly for money damages."  *Segal* v. *Bitar*, 2015 WL 3644479, at \*13 (S.D.N.Y. May 26, 2015).

Although the Complaint's prayer for relief uses equitable language, it predominantly seeks money damages because the five GSAM funds at issue here were removed from the Plan more than four years ago.  (*See* Compl. at 36 (seeking order "compelling Defendants to personally make good to the Plan all losses that the Plan incurred," "requiring Goldman Sachs to disgorge all profits received from . . . the Plan," and "granting . . . other appropriate equitable monetary relief against Defendants, including . . . a surcharge . . . to compensate the class for Defendants' violations of ERISA").)  Refusing to elevate form over substance, courts have construed similar requests for equitable relief as claims for money damages.  *See Great-West Life & Annuity Ins. Co.* v. *Knudson*, 534 U.S. 204, 210 (2002) (ERISA "suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages"); *Chavez* v. *Plan Benefit Servs., Inc.*, 957 F.3d 542, 549-50 (5th Cir. 2020) (generic requests for equitable relief such as "an order that Defendants make good to the [plan] losses" and "an

---

[13] *See also*, *e.g.*, *Brown* v. *Nat'l Life Ins. Co.*, 2013 WL 12096508, at \*7 (C.D. Cal. Oct. 15, 2013) ("Plaintiff primarily seeks money damages.  Thus, certification is inappropriate under Rule 23(b)(1) . . . ."); *Carr*, 2012 WL 909437, at \*7 (certification is inappropriate under Rule 23(b)(1) because "Plaintiffs primarily seek money damages"); *Pantoja* v. *Edward Zengel & Son Exp., Inc.*, 2011 WL 7657382, at \*8 (S.D. Fla. Aug. 5, 2011) (certification is inappropriate under Rule 23(b)(1) because "the alleged injuries on behalf of putative class members are injuries to individual plan accounts").

accounting for profits" are insufficient for Rule 23(b)(1) certification); *Richards* v. *Delta Air Lines, Inc.*, 453 F.3d 525, 531 (D.C. Cir. 2006) (plaintiff "cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money").

Moreover, the Complaint's requests for declaratory and injunctive relief are illusory. Plaintiff seeks "[a] declaration that Defendants have breached their fiduciary duties" and an injunction "enjoining Defendants from any further violations of . . . ERISA." (Compl. at 36.) Those contrived requests are not the focus of this action—monetary recovery is. *See Robinson* v. *Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 164 (2d Cir. 2001) ("Insignificant or sham requests for injunctive relief should not provide cover for . . . certification of claims that are brought essentially for monetary recovery."). The Court "cannot say that [Plaintiff's] claims for monetary relief are merely incidental to [his] claims for injunctive or declaratory relief." *Healthcare Strategies*, 2012 WL 10242276, at *11 ("Rule 23(b)(1) applies only to suits that seek solely or predominantly injunctive or declaratory relief, and does not apply to actions where compensatory damages claims are more than 'incidental.'").

Indeed, if Plaintiff here can certify a class seeking individual money damages under Rule 23(b)(1), then "every class under Rule 23(b)(3) could also be certified under [Rule 23(b)(1)], thereby rendering what was built into Rule 23(b)(3) to protect absent class members— predominance, superiority, as well as opt-out rights—illusory." *Oakley* v. *Verizon Commc'ns Inc.*, 2012 WL 335657, at *11 (S.D.N.Y. Feb. 1, 2012). The absence of these protections is particularly problematic here because whether Plan participants can recover money damages will depend on which comparator funds are selected. "What seems fairly clear is that depriving" thousands of Plan participants "of notice and opt-out protections, where there are undeniable intraclass conflicts pertinent to significant monetary outcomes, would create an unacceptable risk of unfair treatment

of class members." *Langbecker* v. *Elec. Data Sys. Corp.*, 476 F.3d 299, 318 (5th Cir. 2007).
Plaintiff completely ignores these issues, seeking to bind over ███ Plan participants to his
undisclosed choice of comparator funds without any notice or the ability to opt out.

### B.   Plaintiff Fails to Satisfy Rule 23(b)(1)(A)'s Requirements.

"[C]ertification under Rule 23(b)(1)(A) is limited to claims for equitable relief."
*Rambarran* v. *Dynamic Airways, LLC*, 2015 WL 4523222, at *12 (S.D.N.Y. July 27, 2015).
Rule 23(b)(1)(A) does not apply to "actions seeking compensatory damages" because there is no
risk of establishing "incompatible standards of conduct" going forward for "conduct which
occurred wholly in the past." *Id*.  Courts thus have denied Rule 23(b)(1)(A) certification of ERISA
class actions that primarily seek money damages.  *See Healthcare Strategies*, 2012 WL 10242276,
at *11-12 (denying Rule 23(b)(1)(A) certification because "core relief sought . . . is disgorgement
of all [revenue sharing payments]"); *In re First Am. Corp. ERISA Litig.*, 258 F.R.D. 610, 622 (C.D.
Cal. 2009) (denying Rule 23(b)(1)(A) certification because "Plan Participants primarily seek
monetary damages").

The cases cited by Plaintiff (Pls. Br. 23-24) are distinguishable because the plaintiffs in
each sought *prospective* relief enjoining future action, such as "a requirement that Defendants
engage in competitive bidding for Plan record-keeping services." *Krueger*, 304 F.R.D. at 577.[14]
There is no need for prospective relief here:  the five challenged GSAM funds were removed from
the Plan more than two years before this action was filed.  Although Plaintiff requests an order

---

[14] *See also Sacerdote* v. *N.Y. Univ.*, 2018 WL 840364, at *6 (S.D.N.Y. Feb. 13, 2018)
(certifying Rule 23(b)(1)(A) class where "the monetary benefits to the proposed class are merely
incidental to" injunctive relief "preventing the conduct that led to a breach of fiduciary duty"); *In re
Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 180-81 (S.D.N.Y. 2006) (certifying
Rule 23(b)(1)(A) class where "plaintiffs seek injunctive relief—including the retroactive reformation
of the Plan and recalculation of benefits"—and "to enjoin the Plan's application of the fractional rule");
*Kanawi* v. *Bechtel Corp.*, 254 F.R.D. 102, 111-12 (N.D. Cal. 2008) (certifying Rule 23(b)(1)(A) class
where plaintiffs sought to enjoin ongoing "unnecessary and improper fees").

"enjoining Defendants from any further violations of . . . ERISA" (Compl. at 36), such "obey-the-law" requests are impermissible. *See S.C. Johnson & Son, Inc.* v. *Clorox Co.*, 241 F.3d 232, 241 (2d Cir. 2001) ("[U]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law."). Presumably recognizing as much, Plaintiff does not even mention his request for injunctive relief in his brief.

In addition, "because some class members were not injured, the class is not similarly situated such that inconsistent adjudications are a concern." *Thorne*, 2021 WL 1977126, at *3. "Each proposed class member's potential recovery [will] depend on the value of his or her account on certain dates"—which GSAM funds he or she invested in and when. *Bauer-Ramazani*, 290 F.R.D. at 460. It would be "problematic" if Plan participants who "were not injured in the first instance" or who would lose their damages claim based on Plaintiff's selection of comparator funds were unable to "opt out" of any certified class. *Thorne*, 2021 WL 1977126, at *3.

### C.    Plaintiff Fails to Satisfy Rule 23(b)(1)(B)'s Requirements.

The Supreme Court has warned "against adventurous application of Rule 23(b)(1)(B)." *Ortiz* v. *Fibreboard Corp.*, 527 U.S. 815, 845 (1999). "[T]he paradigm suit under Rule 23(b)(1)(B) is the limited fund class action, in which claims are made by numerous persons against a fund insufficient to satisfy all claims." *Doe* v. *Karadzic*, 192 F.R.D. 133, 139 (S.D.N.Y. 2000). Plaintiff does not claim that this is such a case, and his Rule 23(b)(1)(B) arguments are meritless.

First, Plaintiff argues that "[b]ecause the claims are brought on behalf of the Plan, a decision could bar subsequent individual actions under the doctrine of *res judicata*." (Pl.'s Br. 24.) That argument flies in the face of *LaRue*'s holding that plan participants can sue for damages affecting only their individual accounts. *See supra* Section III.A.

Second, Plaintiff speculates that "as a practical matter, the adjudication of one participant's [ERISA] action will influence a subsequent adjudication of the same claims brought by another

participant." (Pl.'s Br. 24-25.) But mere "*stare decisis* or precedential effect of one individual's judgment on another individual's case will not qualify as impeding the latter litigant's interests in a way that would justify certification under Rule 23(b)(1)(B)." Newberg on Class Actions § 4:16.

Third, Plaintiff cites the advisory committee notes' reference to claims asserting a "breach of trust" as an example of Rule 23(b)(1)(B) certification. (Pl.'s Br. 25.) But this "narrow[]" language has no application to cases such as this one that "present[] claims for individualized relief." *Nelson* v. *IPALCO Enters., Inc.*, 2003 WL 23101792, at \*10 (S.D. Ind. Sept. 30, 2003).

## IV.    Plaintiff's Proposed Class Definition Is Overbroad.

Plaintiff's class definition is overbroad for two reasons. First, any certified class must be limited to Plan participants who invested in the five GSAM mutual funds challenged by Plaintiff. *See Troudt*, 325 F.R.D. at 380. Plaintiff's class definition, however, extends to all Plan participants who invested in "*any* Goldman Sachs mutual fund (other than money market funds)" (Pl.'s Br. 15 (emphasis added)), which would include the ███████████████ and ███████████ ███—two GSAM mutual funds that were included in the Plan during the proposed class period but whose performance and fees are unchallenged (*see id.* at 3 n.4; Compl. ¶ 64 n.4). Second, any certified class should include an end date. *See Rodriguez* v. *It's Just Lunch Int'l*, 2018 WL 3733944, at \*6-7 (S.D.N.Y. Aug. 6, 2018). Because the last of the five challenged GSAM mutual funds was removed from the Plan on June 6, 2017, the proposed class period should end on that date. *See Jacobs* v. *Verizon Commc'ns Inc.*, 2020 WL 4601243, at \*9 (S.D.N.Y. June 1, 2020) (ending class period "when Defendants decided to remove the [challenged] Fund").

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion to certify a class.

Dated:  New York, New York
      June 14, 2021

/s/ *Richard C. Pepperman II*

Richard C. Pepperman II
Thomas C. White
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone:  212-558-4000
Facsimile:  212-558-3588
peppermanr@sullcrom.com
whitet@sullcrom.com

*Attorneys for Defendants*