UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Leonid Falberg, as representative of a class of
similarly situated persons, and on behalf of the
Goldman Sachs 401(k) Plan,

Plaintiff,

v.

The Goldman Sachs Group, Inc., The Goldman
Sachs 401(k) Plan Retirement Committee, and John
Does 1-20,

Defendants.

---

**OPINION AND ORDER**

19 Civ. 9910 (ER)

---

Ramos, D.J.:

Leonid Falberg ("Plaintiff" or "Falberg"), a participant in the Goldman Sachs

401(k) Plan (the "Plan"), brings this putative class action on behalf of the Plan and those

similarly situated. Falberg alleges violations of the Employment Retirement Income

Security Act of 1974 ("ERISA") by the Plan's sponsor, The Goldman Sachs Group, Inc.,

and the Plan's managers, The Goldman Sachs 401(k) Retirement Committee and its

members John Does 1-20 (collectively "Defendants"). Before this Court is his motion for

class certification. Doc. 82. For the reasons set forth below, the motion is GRANTED.

## I.    Factual Background and Procedural History[1]

### A.  The Plan and the Retirement Committee

The Plan is a 401(k) plan for eligible employees and former employees of

Goldman Sachs Group, Inc. ("Goldman Sachs") and its affiliates. Doc. 1 ¶¶ 18–19; Doc.

86-1 at 34. It is an employee pension benefit plan within the meaning of 29 U.S.C.

§ 1002(2)(A), and a defined-contribution plan within the meaning of 29 U.S.C.

§ 1002(34). Doc. 1 ¶ 17. Plaintiff worked for Goldman Sachs from 1999 until

---

[1] The Court assumes familiarity with the facts and holdings in its prior July 9, 2020 opinion denying
Defendants' motion to dismiss and its December 28, 2020 opinion denying Defendants' motion for a
certificate of appealability. Docs. 43, 74.

approximately 2008 and has participated in the Plan since approximately 1999; he first invested in the Goldman Sachs Funds that he challenges in approximately July 2014.  *Id.* ¶ 15; Doc. 85 ¶ 2; Doc. 102-13 at 5–7; Doc. 103 ¶¶ 19–20.

The Plan has consistently ranked as one of the 100 largest defined-contribution plans in the United States:  during the proposed class period, it had at least 29,000 participants and held between $6.3 billion and $7.5 billion in participant assets.  Doc. 1 ¶ 21; Doc. 83 at 3.  As a defined-contribution plan, the Plan is organized such that participants have separate accounts into which they can transfer portions of their earnings and through which employers can make contributions to employees' accounts.  Doc. 1 ¶¶ 17, 20.

Defendants are fiduciaries of the Plan and its participants under ERISA.  29 U.S.C. § 1002(21)(A).  *Id.* ¶¶ 24-26.  Goldman Sachs sponsors the Plan and can appoint or remove members of the Goldman Sachs 401(k) Retirement Committee ("Retirement Committee"), which controls the Plan.  *Id.* ¶¶ 24-25.  The Retirement Committee is composed of John Does 1-20, all of whom are senior employees of Goldman Sachs or its affiliates appointed by Goldman Sachs' Management Committee.  *Id.* ¶¶ 25-26; Doc. 83 at 4.  The Retirement Committee has the sole responsibility for establishing investment policies for the Plan and has the power to appoint and remove investment managers.  Doc. 83 at 4.  Since 2002, Rocaton Investment Advisors, LLC ("Rocaton") has served as the Plan's investment advisor.  *Id.*

Plan participants can set up their accounts either through a "target date fund," that is calibrated to become more conservative as it approaches the target date (the employee's retirement date), or by selecting funds from a menu of 35 single-strategy investment options to create their own portfolios.  Doc. 1 ¶ 22; Doc. 83 at 3.  During the relevant time period, approximately 90% of participants were invested in the single-strategy options.  Doc. 1 ¶ 23.  From 2013 until their removal from the menu in 2017, the Plan offered five proprietary actively managed mutual funds on the single-strategy menu:

the Goldman Sachs Large Cap Value Fund ("Large Cap Fund"), the Goldman Sachs Mid Cap Value Fund ("Mid Cap Fund"), the Goldman Sachs High Yield Fund ("High Yield Fund"), the Goldman Sachs Core Fixed Income Fund ("Fixed Income Fund"), and the Goldman Sachs Short-Duration Government Fund ("Government Fund") (together, the "GS Funds").  Doc. 1 ¶¶ 47-48; Doc. 83 at 3.  During this time, Plaintiff was invested in three of the challenged GS Funds, among other investments:  the Large Cap Fund, the Mid Cap Fund, and the High Yield Fund.  Doc 85 ¶ 3.

**B.  Falberg's Claims**

Plaintiff claims that the Retirement Committee failed to follow proper process and overlooked conflicts of interest; failed to timely remove underperforming proprietary funds and did not properly monitor or replace struggling proprietary funds; only voted belatedly in December 2016 to remove all of the proprietary funds in response to a surge in ERISA litigation; and failed to take appropriate measures to minimize fees and costs associated with the proprietary funds.  Doc. 83 at 4–14.  Plaintiff therefore asserts claims against Defendants under ERISA on behalf of the Plan for breach of their fiduciary duties, prohibited transactions with a party-in-interest, and prohibited transactions with a fiduciary.  Plaintiff also asserts a claim against Goldman Sachs for failure to monitor fiduciaries.  Doc. 1 ¶¶ 11, 88–111.

*1.  Procedural Failures*

Plaintiff contends that, although the Retirement Committee had sole responsibility for establishing the Plan's investment policy, it did not have a written Investment Policy Statement ("IPS") for the Plan, which is highly unusual for a large retirement plan.  Doc. 83 at 4; Doc. 87-3 at 5.  Plaintiff also alleges that the Retirement Committee allowed conflicts of interest.  Specifically, Plaintiff points to communications from high-ranking Goldman Sachs officials to the Retirement Committee requesting inclusion of another proprietary fund—the GS Emerging Markets Equity ("EME") Fund—in the Plan.  Doc. 83 at 5.

2.   *Failure to Properly Monitor and Remove Underperforming Funds*

Plaintiff alleges that the GS Funds underperformed as compared to peer funds over 3, 5, and 10-year periods ("benchmarks").  Doc. 1 ¶¶ 47, 52–57; Doc. 83 at 5–6. According to Plaintiff, the Retirement Committee failed to monitor the GS Funds and ignored Rocaton's advice about them.  Doc. 83 at 7–8.  Following presentations by certain of the GS Funds' management teams to the Retirement Committee in 2011 and 2012, Rocaton rated the Large Cap Fund, Mid Cap Fund, and High Yield Fund as "not broadly recommended."  Doc. 83 at 5–6.  Yet the Retirement Committee did not take action in response:  for example, the minutes from the April 2011 meeting when the High Yield Fund management team presented to the Retirement Committee do not reflect any further discussion about the High Yield Fund following the presentation, and the Retirement Committee took no further action after the meeting.  Doc. 83 at 5–6. Similarly, the Retirement Committee retained the Large Cap and Mid Cap Funds in the Plan even after they were rated "not broadly recommended" by Rocaton.  *Id.* at 6.

At the fourth quarter of 2013, many of the non-proprietary actively managed menu options exceeded their benchmarks net of fees, with several outperforming by more than 1.00%.  Doc. 1 ¶¶ 51–52.  The GS Funds, however, fell below almost all of their benchmarks.  *Id.* ¶ 51.  The Large and Mid Cap Funds underperformed by more than 1.00%[2] as compared to their 3-year benchmarks, and the High Yield Fund trailed its 5-year benchmark by over 2.00%.  *Id.* ¶ 52.  At the beginning of the class period in the fourth quarter of 2013, the Large Cap, Mid Cap, and High Yield Funds all underperformed their benchmarks over 3- and 5-year timelines between 67 to 222 basis points; the Government Fund was in the 97th percentile of its peer group over the previous 3 years, and the Fixed Income Fund was in the 95th percentile of its peer group

---

[2] Even a 1% difference in net returns each year can reduce an employee's accumulated savings by 28% by the time of retirement.  Doc. 1 ¶ 38.

over the last 10 years.[3]  Doc. 83 at 7.  Despite this poor performance, the Retirement

Committee did not ask any of the GS Funds' managers to attend a Retirement Committee

meeting and account for their underperformance until September 2016.  *Id.*  By the end of

2015, all but one of the GS Funds had underperformed over the prior 10-year period.

Docs. 32-10 at 9-11.

Plaintiff therefore alleges that despite the GS Funds' poor performance, the

Retirement Committee "effectively gave them a pass for much of the class period"

between the final quarter of 2013 and late 2015, ignoring Rocaton's advice and its

suggestions of alternative funds to consider.  Doc. 83 at 6–9.

### 3.  *Failure to Minimize Fees and Costs*

Plaintiff also alleges that the GS Funds charged higher fees than peer funds.  The

GS Funds charged monthly management and administrative fees for services rendered by

various Goldman Sachs subsidiaries, including Goldman Sachs Asset Management

("GSAM").  Doc. 1 ¶¶ 36, 74, 97, 102.  According to the complaint, the GS Funds cost

more to administer than their peer funds.  *Id.* ¶¶ 49-50.  Plaintiff alleges that Defendants

failed to take measures to minimize expenses associated with the GS Funds:  they used

mutual fund versions of investments rather than less expensive separate account vehicles;

they did not negotiate the fees that were charged for the GS Funds, instead paying the

going rate for Goldman Sachs' proprietary funds; and they did not take advantage of the

opportunity to secure fee rebates to the Plan.  Doc 83 at 12–13; Doc. 1 ¶¶ 65–77.

### C.  The Proposed Class

Plaintiff seeks class certification for claims brought on behalf of the Plan under

Fed. R. Civ. P. 23 and 29 U.S.C. § 1132(a)(2), seeking relief under 29 U.S.C. § 1109.

Section 1109(a) provides that any fiduciary who breaches their duties under ERISA shall

---

[3] Defendants dispute Plaintiffs' characterization of the Retirement Committee's management of the Plan.
Specifically, they write that between 2009 and 2012, each of the GS Funds outperformed their benchmarks,
and that monthly reports sent to the Retirement Committee show that none of the GS Funds were identified
as underperforming their benchmarks over multiple consecutive months until November 2015.  Doc. 99 at
5–6.

"make good to such plan any losses to the plan resulting from each such breach" and "be subject to other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a).

Plaintiff moves for certification of the following proposed class: "All participants and beneficiaries of the Goldman Sachs 401(k) Plan whose Plan account held any Goldman Sachs mutual fund (other than money market funds) any time on or after October 25, 2013, excluding Defendants, any of their directors, and any officers or employees of Defendants with responsibility for the Plan's investment or administrative functions." Doc. 82. Plaintiff seeks to be appointed as Class Representative and to have his counsel designated as Class Counsel. *Id.*

### D. Procedural History

Plaintiff filed the instant complaint under 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3) on October 25, 2019, alleging that Defendants breached their duties of loyalty and prudence, engaged in prohibited transactions, and failed to monitor the Plan's fiduciaries in violation of 29 U.S.C. §§ 1104 and 1106. Doc. 1. On January 27, 2020, Defendants moved to dismiss the complaint. Doc. 30. On July 9, 2020, the Court denied Defendants' motion to dismiss. Doc. 43. On August 14, 2020, Goldman Sachs moved for a certificate of appealability with respect to the Court's July 2020 decision on threshold timeliness and exhaustion issues, which the Court denied on December 28, 2020. Docs. 57, 74. On August 21, 2020, Goldman Sachs answered, and it filed an amended answer on December 31, 2020. Docs. 59, 75. Plaintiff filed the instant motion to certify the class on April 30, 2021. Doc. 82. In support of his motion, Plaintiff includes, among other documents, a declaration stating his investments in the GS Funds and his qualifications to serve as class representative; a declaration from counsel about their qualifications to serve as class counsel; examples of Goldman Sachs 401(k) Plan Form 5500s; the Goldman Sachs 401(k) Plan 2016 Summary Description and Plan

Document; excerpts of testimony from the deposition of Retirement Committee Secretary Cheryl Mintzer; excerpts from quarterly reports during the class period for certain of the GS Funds; and Plan Form 5500s for a comparator fund.  Docs. 85–87.

## II.     Legal Standard

A court may certify a class action only if it determines that a class satisfies the four prerequisites of Rule 23(a):  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).  The four requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."  *Id.* (internal quotation marks omitted).  The party seeking class certification must establish by a preponderance of the evidence that each of Rule 23's requirements is met.  *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 264 (2d Cir. 2016).

The putative class must also satisfy at least one of the three requirements listed in Rule 23(b).  *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013).  Here, Plaintiff seeks certification under Rule 23(b)(1).  "Rule 23(b)(1) applies . . . where individual adjudications 'as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.'"  *Wal-Mart*, 564 U.S. at 361 n.11 (quoting Rule 23(b)(1)(B)).  Rule 23(b)(1) permits class certification if

> prosecuting separate actions by individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not

parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).

A party seeking class certification must affirmatively demonstrate compliance with Rule 23. *Wal-Mart*, 564 U.S. at 350. In other words, the Rule "does not set forth a mere pleading standard." *Id.* A district court must undertake a "rigorous analysis" in order to determine whether the requirements have been met. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *see also Douglin v. GreatBanc Tr. Co.*, 115 F. Supp. 3d 404, 409 (S.D.N.Y. 2015). When considering a motion for class certification, the court must accept the allegations in the complaint as true, *Meyer v. United States Tennis Ass'n*, 297 F.R.D. 75, 82 (S.D.N.Y. 2013), and "should not assess any aspect of the merits unrelated to a Rule 23 requirement." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)). However, the court's analysis will inevitably "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351. On a Rule 23 motion, "the ultimate question is not whether the plaintiffs . . . will prevail on the merits but rather whether they have met the requirements of Rule 23." *Gortat v. Capala Bros.*, 257 F.R.D. 353, 362 (E.D.N.Y. 2009). Although the Court must resolve factual disputes relevant to satisfying each Rule 23 requirement, "any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (citing *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 41).

### III.    Discussion

Defendants challenge whether Plaintiff has established class-wide standing and whether he has met his evidentiary burden for class certification under Rule 23(a) and 23(b). The Court addresses each argument in turn.

### A.  Standing

Defendants argue that Plaintiff has not carried his burden to prove class-wide standing, in that he has not offered any methodology for proving injury to the class, and the proposed class includes many uninjured plan participants who obtained returns net of fees that were better than the returns they would have invested had they invested in one of the alternatives Plaintiff identifies in his complaint.  Doc. 99 at 8–10; *see* Doc. 103. Plaintiff responds that Defendants misconstrue his burden in an action of this nature, where he is suing in his representative capacity on behalf of the Plan, and therefore need not establish individualized damages to each potential class member.  Doc. 114 at 1–3. Plaintiff further argues, that, even ignoring the derivative nature of ERISA claims, Defendants' standing argument fails because class members have suffered financial harm by paying higher fees for the GS Funds and because an injury for the purposes of establishing standing need not be sufficient to support "a claim for damages."  *Id.* at 3 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 265 (2d Cir. 2006)).  While authority exists in support of both positions, the Court concludes that the weight of caselaw in this Circuit supports Plaintiff, and that class-wide standing is not a barrier to class certification.

To establish standing under Article III of the Constitution, a plaintiff must show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief."  *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A plaintiff must have a "personal stake" in the case in order to have standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  "At the class certification stage, the Second Circuit has approved of evaluating standing by relying on the pleadings and 'constru[ing] the complaint in favor of the complaining party.'"  *Leber v. Citigroup 401(k) Plan Investment Committee*, 323 F.R.D. 145, 154 ("*Leber IV*") (quoting *Denney*,

443 F.3d at 263).  In an ERISA class action, "only one of the named Plaintiffs . . . is required to establish standing in order to seek relief on behalf of the entire class." *Jacobs v. Verizon Commc'ns Inc.*, No. 16 Civ 1082 (PGG) (RWL), 2020 WL 4601243, at *6 (S.D.N.Y. June 1, 2020), *report and recommendation adopted,* No. 16 Civ. 1082 (PGG), 2020 WL 5796165 (S.D.N.Y. Sept. 29, 2020) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007)); *see also Kendall v. Emps. Ret. Plan of Avon Prod.*, 561 F.3d 112, 118 (2d Cir. 2009) ("In a class action, once standing is established for a named plaintiff, standing is established for the entire class").

To establish class standing, "a plaintiff must show that (1) the plaintiff has 'personally suffered' an injury-in-fact as a result of the defendant's conduct, and (2) the defendant's conduct 'implicates the same set of concerns as the conduct alleged to have caused injury' to the other putative class members." *Leber IV*, 323 F.R.D. at 156 (quoting *NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012)).  In a derivative suit brought under 29 U.S.C. § 1132(a)(2), plaintiffs "do not need to point to individualized injuries with respect to each Plan investment in order to establish constitutional standing."  *Id.* at 155 (citing *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty, Inc.*, 710 F.3d 57, 67 n.5 (2d Cir. 2013)).[4]  "The 'same set of concerns' are implicated and the named plaintiff has class standing where the claims of absent class members require similar inquiries and proof."  *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 9936 (LGS),

---

[4] In its prior opinion, the Court discussed cases where courts had found that plaintiffs lacked standing, including *Patterson v. Morgan Stanley*, No. 16 Civ. 6568 (RJS), 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019), which is an outlier, and other cases that are distinguishable, including *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015) (holding no standing where plaintiff failed to allege *any* personal injury to her plan account).  Doc. 43 at 13–16.  More recently, in *In re Omnicom ERISA Litig.*, the court distinguished *L.I. Head Start* and granted defendants' motion to dismiss plaintiffs' claims as to the investment funds in which plaintiffs were not invested.  No. 20 Civ. 4141 (CM), 2021 WL 3292487, at *8–10  (S.D.N.Y. Aug. 2, 2021) (relying on *Patterson* and *Taveras* to find that plaintiffs did not have Article III standing).  However, as discussed in the Court's prior ruling, *Patterson* and now *Omnicom* appear to represent the minority view in this district.

2017 WL 3868803, at *10 (S.D.N.Y. Sept. 5, 2017) (quoting *NECA-IBEW*, 693 F.3d at 162)).

The Court has already found that Plaintiff, who invested in three of the five challenged GS Funds, has standing to bring this suit on behalf of the Plan.  Doc. 43 at 13–16.  Accordingly, Plaintiff meets the first prong of the test articulated in *NECA-IBEW* and *Leber IV.*  He also meets the second prong in that the conduct he challenges— namely, Defendants' "allegedly disloyal and imprudent conduct"—implicates the same concerns for all members of the proposed class invested in the challenged GS Funds during the relevant time period.  *Leber IV*, 323 F.R.D. at 156–57; *see also Moreno,* 2017 WL 3868803, at *10 (S.D.N.Y. Sept. 5, 2017) ("Because the alleged harms are premised on the process Defendants used to manage the Plan, the claims involve similar inquiries and proof, and thus implicate the same set of concerns."); *Cunningham v. Cornell Univ.*, No. 16 Civ. 6525 (PKC), 2019 WL 275827, at *4 (S.D.N.Y. Jan. 22, 2019), *appeal pending* ("Defendants' alleged breaches of their fiduciary duties also implicate the same set of concerns with respect to non-named class members."); *Sacerdote v. New York Univ.,* No. 16 Civ. 6284 (KBF), 2018 WL 840364, at *7 (S.D.N.Y. Feb. 13, 2018) ("[P]laintiffs need not prove individualized damages in an ERISA class action case; rather, an injury *to the Plan* suffices. [. . .]  And while not every member of the class participated in the challenged fund options, the alleged foregone opportunities from funds that were not included and the alleged reduction in choice that resulted is an alleged injury in fact." (citations omitted)); *cf. Thorne v. U.S. Bancorp*, No CV 18-3405 (PAM) (KMM), 2021 WL 1977126, at *2 (D. Minn. May 18, 2021) (denying class certification in an ERISA action challenging reductions to pensions because "some potential class members lack Article III standing").

Despite Defendants' arguments to the contrary, the Supreme Court's recent decisions in *Thole* and *TransUnion* do not preclude a finding of class standing.  In *Thole*, the Supreme Court found that plaintiffs who had a defined-benefit plan had not

11

established injury-in-fact necessary to establish standing.  However, the Court

specifically noted that it was "[o]f decisive importance to this case, [that] the plaintiffs'

retirement plan is a defined-benefit plan, not a defined-contribution plan," and that

defined-benefit plan participants were "not similarly situated to the beneficiaries of a

private trust or to the participants in a defined-contribution plan." *Thole*, 140 S. Ct. at

1618–19.  Courts in this district have thus found *Thole* to have "little or no relevance

when evaluating standing in ERISA cases concerning defined-contribution plans." *In re*

*Omnicom ERISA Litig.*, 2021 WL 3292487, at *8 (citing *Brown v. Daikin Am., Inc.*, No.

18 Civ. 11091 (PAC), 2021 WL 1758898, at *4 (S.D.N.Y. May 4, 2021) and *Cates v.*

*Trustees of Columbia Univ.*, No. 16 Civ. 6524 (GBD), 2021 WL 964417, at *1 (S.D.N.Y.

Mar. 15, 2021)).  In their sur-reply, Defendants argue that the Supreme Court's holding in

*TransUnion* that every class member must have Article III standing to recover individual

damages forecloses standing for the class absent concrete harm to each member of the

proposed class.  Doc. 118 at 3 (citing *TransUnion*, 141 S. Ct. at 2200).   However, the

Court in that case specifically declined to "address the distinct question whether every

class member must demonstrate standing *before* a court certifies a class." *Id.* at 2208 n.4.

While not in the context of class certification, other courts have similarly found that

*TransUnion* does not preclude ERISA plaintiffs from establishing standing at the outset.

*See Alas v. AT&T Servs.*, No. 2:17-CV-8106-VAP (RAOx), 2021 WL 4893372, at *13

(C.D. Cal. Sept. 28, 2021) (rejecting defendants' argument that *TransUnion* precluded

plaintiffs from establishing that violation of ERISA reporting requirements was a

concrete injury and stating, "*TransUnion LLC* is factually distinguishable from the

present case, and in light of the explicit language in *Thole* regarding the inapplicability of

its holding to defined-contribution plans, the Court finds Plaintiffs have standing to seek

injunctive relief with respect to the Form 5500 filings."); *Cutrone v. Allstate Corp.*, No.

20 Civ. 6463, 2021 WL 4439415, at *5–6 (N.D. Ill. Sept. 28, 2021) (denying motion to

dismiss for lack of standing); *see also Law et al. v. Estee Lauder, Inc., et al.*, 20 Civ.

4770 (JMF), Doc. 74 at 12–16 (July 8, 2021 Hr'g Tr.) (ruling that *TransUnion* was not relevant to the standing analysis where plaintiffs had sufficiently alleged injury with respect to the funds in which they had invested); Doc. 78 at 1–2 (S.D.N.Y. July 26, 2021) ("Put simply, [*TransUnion*] does not speak to the issue decided by this Court in its oral ruling:  whether Plaintiffs, having alleged an injury-in-fact, may bring claims for mismanagement of the plan as a whole or merely of the funds within the plan in which they invested.").

Separately, Defendants argue that Plaintiff has not established any class-wide injury apart from performance—that is, he has not proved by a preponderance of the evidence that the proposed class members were injured by Defendants' high fees, alleged failure to secure fee rebates, or use of mutual funds rather than separately managed accounts.  Doc. 99 at 11–12.  Defendants include the declaration of Christopher Ceder, former head of Americas Retirement in the Human Capital Management division of Goldman Sachs, to the effect that the Plan could not have claimed fee rebates from its recordkeeper because the Plan's recordkeeper did not receive funds from GSAM.  Doc. 105 ¶¶ 4–6.  Defendants also include the declaration of Anne Buehl, a principal at Rocaton since 2002, stating that GSAM could not collect asset management fees from the Plan for managing assets in separate accounts, and therefore did not use separate accounts, and that in her view it was not possible for the Retirement Committee to negotiate lower fees for the GS Funds.  Buehl also states that Rocaton regularly advised the Retirement Committee about opportunities to lower fees and would have done so vis-à-vis the GS Funds had those opportunities existed.  Doc. 107 ¶¶ 5–6.  While this evidence certainly challenges Plaintiff's allegations of damages based on Defendants' failure to secure lower fees or use alternative investment vehicles, the Court agrees with Plaintiff that these arguments go to the merits and are not ripe for adjudication at this time.  Doc. 114 at 4.

Accordingly, Plaintiff has sufficiently established class standing at this stage in the litigation.

**B. Rule 23(a) Requirements**

Defendants do not contest whether Plaintiff meets the requirements of numerosity and commonality; rather, they challenge typicality and adequacy.  Doc. 99 at 13.

*1.  Numerosity*

In the Second Circuit, "numerosity is presumed where a putative class has forty or more members." *Shahriar*, 659 F.3d at 352; *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  The Plan had over 29,000 participants during the relevant time period from October 2013 to June 2017.  Doc. 83 at 3.  According to the declaration of Defendants' expert and economist Kristen Willard, Ph. D., who analyzed monthly participant-level holdings data from that time period, 17,575 participants had some investment in at least one of the challenged GS Funds during that time.  Doc. 103 ¶¶ 2, 13.  Accordingly, numerosity is satisfied.  *See Moreno* 2017 WL 3868803, at *4 (numerosity requirement met in derivative ERISA suit where the plan had 22,000 participants and 10,000 former participants); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17 Civ. 563 (JMF), 2019 WL 2428631, at *6 (S.D.N.Y. June 11, 2019).

*2.  Commonality*

Defendants do not contest commonality.  "Commonality is satisfied where 'there are questions of law or fact common to the class.'"  *Moreno*, 2017 WL 3868803, at *4 (quoting Fed. R. Civ. P. 23(a)(2)).  "A question of law or fact is common to the class if the question is 'capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Id.* (quoting *Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)); *see also Wal-Mart*, 564 U.S. at 349–50.  "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."  *Nextel Comms.*, 780 F.3d at 137.  "Typically, the question of

defendants' liability for ERISA violations is common to all class members because a breach of fiduciary duty affects all participants and beneficiaries." *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12 Civ. 2548 (VSB), 2017 WL 1273963, at *7 (S.D.N.Y. Mar. 31, 2017) (internal quotation marks omitted).

Relying on *Leber IV*, *Moreno*, and *Beach*, Plaintiff argues that the case at bar is a typical ERISA class action in that it involves "at least two questions that are capable of classwide resolution:  whether defendants improperly favored proprietary funds in order to benefit themselves at the expense of Plan participants, and whether defendants failed to prudently and loyally monitor the Plan's investments."  Doc. 83 at 18 (citing *Leber IV*, 323 F.R.D. at 160).  The Court agrees that commonality is satisfied.

3. *Typicality and Adequacy*

i. *Legal Standards*

**Typicality.**  Rule 23(a)(3) requires a plaintiff to establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "Like commonality, the typicality requirement in Federal Rule of Civil Procedure 23(a)(3) serves as a 'guidepost[ ] for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  *Leber IV*, 323 F.R.D. at 162 (quoting *Wal-Mart*, 564 U.S. at 349 n.5.)  Therefore, the party seeking certification must establish that each class member's claims "arise[] from the same course of events and each class member makes similar arguments to prove the defendant's liability."  *Id.* (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *accord Cent. States*, 504 F.3d at 245.  Furthermore, the operative "disputed issues of law or fact [must] occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (alterations and quotation marks omitted).

Accordingly, when named plaintiffs allege that "the same unlawful conduct was directed at or affected" both the plaintiff and the larger class, "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993); *see also Balverde v. Lunella Ristorante, Inc.*, No. 15 Civ. 5518 (ER), 2017 WL 1954934, at *7 (S.D.N.Y. May 10, 2017).

**Adequacy.**  Under Rule 23(a)(4), "[a]dequacy is twofold:  the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney*, 443 F.3d at 268; *see also Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 170 (2d Cir. 2001); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016).  Rule 23(a)(4) "raises concerns about the competency of class counsel and conflicts of interest." *Wal-Mart*, 564 U.S. at 345, 349 n.5 (citing Fed. R. Civ. P. 23(a)(4)).  In assessing the adequacy of counsel, courts must consider whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *accord Caufield v. Colgate-Palmolive Co.*, No. 16 Civ. 4170 (LGS) (KNF), 2017 WL 3206339, at *5 (S.D.N.Y. July 27, 2017).

   *ii.   Discussion*

   Defendants argue that Plaintiff has not proved that he is a typical and adequate class representative because:  (1) Plaintiff is not typical of the proposed class in that he was only invested in three of the five GS Funds, and his proposed class formation glosses over intra-class conflicts that may be created by his selection of comparator funds; (2) unlike Plaintiff's, some putative class members' claims may be barred by ERISA's three-year statute of limitations; and (3) unlike Plaintiff, thousands of putative class members have signed agreements to arbitrate disputes with Goldman Sachs through their FINRA Form U4 or their Separation Agreements.  Doc. 99 at 14–19.  Defendants argue that

Plaintiff has failed to provide sufficient detail about his investments and therefore he has not established whether he "has adequate incentive to pursue the class's claim, and whether some difference between the class representative and some class members might undermine that incentive."  Doc. 99 at 14 (citing *In re Payment Card Interchange Fee Antitrust Litig.*, 827 F.3d at 231).

First, Defendants argue that Plaintiff has not established that he is typical of the class because he did not invest in two of the GS Funds:  the Fixed Income Fund and the Government Fund.[5]  Of the three GS Funds in which he did invest, Plaintiff was invested in the Large Cap and High Yield Funds for only two months.[6]  Doc. 99 at 15; Doc. 103 ¶¶ 21–22.  Plaintiff counters that this focus on his individual investment choices is misplaced, because the controlling issue in a derivative action is the defendant's conduct.  Doc. 114 at 5–6.  For their part, Defendants rely on *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011), in which the Seventh Circuit held that the class certified by the district court was overbroad and did not meet the typicality requirement of Rule 23(a)(3), in part because many of the class members had never held shares in two of the challenged funds in a 401(k) plan.[7]  The Seventh Circuit noted that "it seems that a class

---

[5] Defendants again assert that Plaintiff does not have standing to assert claims challenging these two Funds. Doc. 99 at 15.  For the reasons stated above and in the Court's July 2020 order, the Court finds that Plaintiff has sufficiently established standing.

[6] Defendants also argue that Plaintiff is neither an adequate nor typical class representative because he earned $104 more by investing in the Large Cap Fund than he would have earned by investing in one of the "superior alternatives" identified in the complaint, and because his damages for his investment beginning in April 2017 in the High Yield Fund are *de minimis* (under $150).  Doc. 99 at 15.  Plaintiff counters that there is no support for the claim that he must suffer a certain threshold of economic harm to be an adequate class representative.  Doc. 114 at 5 n.9.  The Court agrees.

[7] Defendants also cite *Troudt v. Oracle Corp.*, 325 F.R.D. 373, 380–81 (D. Colo. 2018), *amended*, No. 16-CV-00175 (REB) (SKC), 2019 WL 1006019 (D. Colo. Mar. 1, 2019) and *Fuller v. SunTrust Banks, Inc.*, No. 1:11-CV-784 (ODE), 2018 WL 3949698, at *7 (N.D. Ga. June 27, 2018), in which the district courts certified class actions but modified the class definitions to address concerns over adequacy and typicality. Doc. 99 at 15.  The *Troudt* court declined to certify an imprudent investment class related to a certain investment fund in which no named plaintiffs had invested, and the *Fuller* court certified eight separate classes for each challenged fund.  Plaintiffs argue that these cases are non-binding and point out that the *Troudt* case did not discuss whether plaintiffs had alleged a uniform course of conduct relating to proprietary funds.  Doc. 114 at 6 n.11.  Plaintiffs also point to other district court decisions certifying classes where, as here, named plaintiffs had not invested in all of the proprietary funds they challenged.

representative in a defined-contribution case would at a minimum need to have invested in the same funds as the class members." *Id.* However, *Spano* is not binding authority, and both the *Leber IV* and *Moreno* courts considered and rejected its applicability in similar cases. The *Leber IV* court in particular found that *Spano* is distinguishable both because of the underlying facts and because the Second Circuit, unlike the Seventh, does not have a *per se* rule requiring exact congruence of investments. *Leber IV*, 323 F.R.D. at 163. The court also rejected the *Spano* court's typicality analysis because "[proving liability in *Spano* would not only have required the consideration of a fiduciary's conduct with respect to each individual fund, but would have also required plaintiffs to prove their claims through separate inquiries making use of distinct metrics," and the proper inquiry instead was whether all the funds at issue were proprietary funds and whether class members' claims implicated "allegedly disloyal and imprudent conduct that impacted them in the same manner." *Id.* (citing *Robidoux*, 987 F.2d at 936–37); *see also Moreno*, 2017 WL 3868803, at *5 ("Liability is determined based on Defendants' not Plaintiffs' decisions."); *see also Caufield*, 2017 WL 3206339, at * 7–8 (finding that plaintiffs challenging a defined-benefit plan had established typicality because they were "participants in the same plan and were subject to the same alleged errors").

Defendants also argue that Plaintiff's experience indicates that he is not positioned to pursue class claims vigorously or to represent the class at trial. That he was

---

Doc. 114 at 5 (citing *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 573 (D. Minn. 2014) ("as Plan participants alleging breaches of the fiduciary duties Defendants owed to the Plan, the class members are seeking redress of similar grievances under the same legal and remedial theories."); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109 (N.D. Cal. 2008) ("This inquiry [whether plaintiffs chose different investment options] . . . is beyond the proper scope of certifying the class. If the Plaintiffs recover any damages on behalf of the Plan, it will be up to the Plan administrator to determine how those damages are to be distributed."); *Cunningham*, 2019 WL 275827, at *3; *In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-06213 (MMM) (JCX), 2011 WL 3505264, at *10 (C.D. Cal. Mar. 29, 2011); *Tussey v. ABB, Inc.*, No. 06-04305-CV (NKL), 2007 WL 4289694, at *7 (W.D. Mo. Dec. 3, 2007)).

primarily invested in the Mid Cap Fund, and was only minimally damaged by his brief investment in the Large Cap and High Yield Funds, will incentivize him to select comparator funds that maximize his damages at the expense of the proposed class membership.  Doc. 99 at 15–17; *see also* Doc. 103 ¶¶ 29–30 (assessing Plaintiff's alleged damages for the Large Cap and High Yield Funds against his proposed comparator funds).  Moreover, because Plaintiff was only invested in the Large Cap and High Yield Funds for two months out of the 43 months at issue, the timing of his investments will be the subject of cross-examination and defenses at trial that will not apply to other class members.  *Id.* at 15.  Plaintiff replies that his own damages are not relevant to adequacy; rather, the relevant injury is how Defendants' conduct "affected the pool of assets[.]" Doc. 114 at 5 (citing *Kanawi*, 254 F.R.D. at 109).

The Court again agrees with Plaintiff.  While most courts in this district have considered similar challenges under the commonality or typicality rubric rather than adequacy, the majority have granted class certification.  Because Plaintiff challenges the Plan's process as it pertained to all participants, and because damages will inure to the Plan, there is no intra-class conflict.  The *Moreno* court rejected a similar argument with respect to commonality, stating that variation in the performance of class members' portfolios did not establish intra-class conflicts and noting that "[t]his argument, cast here as an argument about conflicts over the propriety of an investment, has been repeatedly rejected as an objection to class certification when described as a conflict over the preferred damages period, or as an objection to the adequacy of representation."  *Moreno*, 2017 WL 3868803, at *5 (collecting cases); *see also Jacobs*, 2020 WL 4601243, at *14 ("any monetary relief will be paid to the Plan, and the Plan fiduciaries would be responsible for allocating the recovery among participants."); *Cunningham*, 2019 WL 275827 at *7–8.  Plaintiff has submitted a declaration attesting that he has actively participated in the litigation to date, is unaware of any conflicts with the proposed class, understands his responsibilities as class representative, and will faithfully represent the

interests of the class.  Doc. 85 ¶¶ 5–8.  Plaintiff's attorneys have significant experience with ERISA litigation and are well qualified to represent the class.  *See* Doc. 86-1 ¶ 8 (explaining that counsel's firm has been appointed as class counsel in over 20 breach of fiduciary duty cases involving retirement plans).  Accordingly, the Court finds that Plaintiff and his counsel satisfy the adequacy requirement.

Defendants also challenge typicality based on affirmative defenses they may raise as to many of the proposed class members, including statutes of limitations and arbitration agreements.  However, "[c]ourts in this circuit have certified classes notwithstanding the purported defects Defendants identify."  *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2017 WL 1273963, at *10 (collecting cases).  Specifically, Defendants challenge typicality with regards to ERISA's three-year statute of limitations. The three-year statute of limitations begins to run when the participant has "actual knowledge of the breach or violation."  29 U.S.C. § 1113(2).  The Supreme Court recently held that, to have actual knowledge, "the plaintiff must in fact have become aware of that information."  *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S.Ct. 768, 773, 778 (2020).  As such, the fact that plaintiffs may have received notices or disclosures about a breach is not sufficient to establish actual knowledge.  *Id.* at 778–79.  Given the particular and individualized nature of this test, Defendants argue that many putative class members' claims are likely time-barred, and Plaintiff has not adduced any evidence of when class members learned of the alleged breach.  Doc. 99 at 17–18.  They write that "[t]here is no way of knowing—short of thousands of mini-trials that defeat the predominance of common questions under Rule 23(b)(3)—which disclosures each proposed class member read and thus when each acquired 'actual knowledge' of the alleged violations."  *Id.*  Plaintiff replies that the statute of limitations is an affirmative defense for which Defendants bear the burden of proof.  Doc. 114 at 7.  While Defendants are correct that Plaintiff has not put forth evidence of when the potentially 17,575 (or 29,000) class members learned of the alleged breach, such a record would be

unwieldy at this stage of the litigation, and, more to the point, is not Plaintiff's burden to bear. *See Moreno*, 2017 WL 3868803, at *6 ("The record on this motion does not show that any named Plaintiff or class member had—or even could have—'actual knowledge' of that process. Accordingly, the statute of limitations is not an issue that impedes class certification here.") (citations omitted); *Sacerdote,* 2018 WL 840364, at *7. While *Moreno* and *Sacerdote* both pre-date *Sulyma*, the *Jacobs* court noted in passing that the *Sulyma* decision further undercut defendants' statute of limitations objection to class certification—in fact, defendants dropped the argument entirely in light of the Supreme Court's decision. *Jacobs*, 2020 WL 4601243, at *5 n.9. For this reason, that some of the proposed class members may have had actual knowledge of the alleged breach of fiduciary duty more than three years before Plaintiff initiated this suit[8] is speculative at this juncture and does not defeat a finding of typicality or adequacy.

Defendants' third and final challenge to typicality is that thousands of members of the proposed class—but not Plaintiff—have signed agreements to arbitrate all disputes with Goldman Sachs in either their FINRA Form U4s or their Separation Agreements. Defendants intend to move to compel arbitration should a class be certified. Doc. 99 at 18–19. Plaintiff replies that the existence of arbitration agreements has no bearing on class certification, and that the Second Circuit's decision in *Cooper v. Ruane Cunniff & Goldfarb Inc.* forecloses the Defendants' anticipated arbitration defenses. In that case, the Second Circuit held that "in the context of an employment arbitration agreement, a claim will 'relate to' employment only if the merits of that claim involve facts particular to an individual plaintiff's own employment." 990 F.3d 173, 184–85 (2d Cir. 2021). Therefore, that plaintiff had signed an arbitration agreement with his employer did not

---

[8] The Court previously considered and denied Defendants' motion to dismiss the complaint as time-barred. Doc. 43 at 10–11. The parties' arguments at that time hinged not on the three-year statute of limitations based on actual knowledge, but rather on the alternative six-year statute of limitations set forth in 29 U.S.C. § 1113(1)(A). Plaintiff brought his complaint in October 2019, within six years after the date of the last action constituting a part of the alleged breach or violation.

foreclose him from bringing an ERISA action on behalf of the plan.  Defendants argue that the arbitration provisions executed by some of the class members are broader than those at issue in *Cooper*.  Doc. 99 at 18.  However, that is not necessarily dispositive, as courts in this district have found "infinite arbitration clauses" to be invalid.  *See McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264, 274–75 (S.D.N.Y. 2021).  In this instance, the Court need not address whether or not these arbitration agreements would bar certain of the proposed class members' claims, because these go to individual defenses rather than certification.  *Farley v. Baird, Patrick & Co.*, No. 90 Civ. 2168 (MBM), 1992 WL 321632, at *9 (S.D.N.Y. Oct. 28, 1992) ("[A] court will not deny certification because arbitration provisions or statutory limitations periods may apply to some class members, especially if the inquiry includes questions about the merits of the litigation.").

Finally, while Defendants do not challenge the proposed class on ascertainability grounds, the Court notes briefly that the proposed class also meets the "implied requirement of 'ascertainability,'" which "'requires only that a class be defined using objective criteria that establish a membership with definite boundaries.'"  *Jacobs*, 2020 WL 4601243, at *5 (quoting *In re Petrobras Securities*, 862 F.3d 250, 264 (2d Cir. 2017)).

For these reasons, the Court finds that the proposed class meets the requirements of Rule 23(a).

### C.  Rule 23(b) Requirements

The proposed class must also meet one of the requirements of Rule 23(b). Plaintiff seeks certification under Rule 23(b)(1)[9] and argues that representative ERISA

---

[9] Plaintiff's complaint indicated that he would seek certification under Rule 23(b)(3) in the alternative, but he does not address it in his moving papers or in reply.  *See* Docs. 1, 83, 114.  As noted in *Leber IV*, Rule 23(b)(1) class actions differ from those certified under Rule 23(b)(3) in that they are "not subject to the Rule 23(c) provision for notice to absent class members or the opportunity for potential class members to opt out of membership as a matter of right."  *Leber IV*, 323 F.R.D. at 164 (citing *In re Simon II Litig.*, 407 F.3d 125, 133 (2d Cir. 2005)).

actions brought on behalf of plans "make[] litigation of this kind 'a paradigmatic example of a [23](b)(1) class.'"  Doc. 83 at 23 (quoting *In re Beacon Assoc. Litig.*, 282 F.R.D. 315, 342 (S.D.N.Y. 2012)).

"A court may certify a class under Rule 23(b)(1) if 'prosecuting separate actions by or against individual class members would create a risk of:  (A) inconsistent or varying adjudications ... that would establish incompatible standards of conduct for [defendants]; or (B) adjudications with respect to individual class members that ... would be dispositive of the interests of [non-party members] or would substantially impair or impede their ability to protect their interests.'"  *Leber IV*, 323 F.R.D. at 165 (quoting Fed. R. Civ. P. 23(b)(1)).  Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members."  *Id.* (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004)).

Plaintiff argues that certification is appropriate under either 23(b)(1)(A) or 23(b)(1)(B) because Defendants' fiduciary duties are the same with respect to all members of the proposed class, and because "adjudication of the named plaintiff['s] suit would be dispositive of the interests of other participants in the Plan."  Doc. 83 at 23–24 (quoting *Cunningham*, 2019 WL 275827, at *8).  Furthermore, because Plaintiff's claim is brought on behalf of the Plan, an adjudication of the instant case could bar subsequent actions brought by individual participants under the doctrine of *res judicata.  Id.* at 24. Defendants argue that Plaintiff has not met his burden to show that class certification is appropriate under Rule 23(b)(1), because his action is fundamentally one for money damages rather than equitable relief, and "individualized monetary claims belong in Rule 23(b)(3)."  Doc. 99 at 19 (quoting *Wal-Mart Stores,* 564 U.S. at 362).  Defendants go on to urge that the Supreme Court's holdings in *Wal-Mart* and *LaRue v. Dewolff, Boberg, & Associates*, 552 U.S. 248 (2008) mean that defined-contribution plan participants can bring claims under ERISA § 502(a)(2) on behalf of their own individual accounts.  *Id.* at

20.  Therefore, because participants have an individual remedy, individual damages actions under ERISA are not "impossible or unworkable," which the Court in *Wal-Mart* stated was the hallmark of a 23(b)(1) class.  *Wal-Mart*, 564 U.S. at 361.  Defendants cite a 2012 decision from the District of Nevada finding certification under 23(b)(1)(B) inappropriate because individual adjudications "would not be dispositive of the interests of absent members in light of *LaRue.*"  *Carr v. Int'l Game Tech.*, No. 3:09-CV-00584-ECR, 2012 WL 909437, at *7 (D. Nev. Mar. 16, 2012), *on reconsideration,* No. 3:09-CV-00584-RCJ, 2013 WL 638834 (D. Nev. Feb. 20, 2013).  Therefore, certification of a mandatory class may infringe on the due process rights of absent class members.  Doc. 99 at 20–21, 24.  Plaintiff replies that the weight of caselaw in this Circuit supports certification under Rule 23(b)(1), citing *L.I. Head Start*, *Moreno*, *Jacobs*, and *Sacerdote*, all of which found 23(b)(1) certification appropriate.  Doc. 114 at 9.

The Court agrees with Plaintiff that, considering the derivative nature of the suit and the fact that Plaintiff challenges procedures and practices common to the entire Plan, certification under Rule 23(b)(1) is appropriate.  As Plaintiff points out, courts in this district have considered and rejected the exact arguments based on *LaRue* and *Wal-Mart* that Defendants make here.  "Although courts are split over whether Rule 23(b)(1)(B) remains an appropriate class vehicle for fiduciary-breach claims under ERISA, a majority have held that it is."  *Moreno*,  2017 WL 3868803, at *8 (collecting cases)).  The *Moreno* court specifically found that certification under Rule 23(b)(1)(B) was appropriate because named plaintiffs were challenging defendants' "process for selecting and retaining the investment options presented *to all Plan participants*," and therefore adjudication of named plaintiffs' claims would affect later actions by other participants.  *Id.* at *9.  In *Sacerdote*, the court found defendant's reliance on *LaRue* misplaced because, "[t]he Court there held that a § 1132(a)(2) claim may be pursued for recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account.  It did not preclude class actions for 20,000 plan participants who were allegedly harmed by the

same breach of fiduciary duty." 2018 WL 840364, at *6. *See also Caufield*, 2017 WL 3206339, at *6; *Jacobs*, 2020 WL 4601243, at *13 (quoting *Cunningham*, 2019 WL 275827, at *8)); *Beach*, 2019 WL 2428631, at *9; *Leber IV*, 323 F.R.D. at 165 (all finding certification under Rule 23(b)(1)(B) appropriate); *cf. In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2017 WL 1273963, at *12–13 (granting certification under 23(b)(3)).

Because resolution of Plaintiff's claims with regards to Defendants' administration of the Plan will be dispositive of the interests of other participants, the Court finds that certification under Rule 23(b)(1)(B) is warranted. Accordingly, the Court need not address Defendants' argument that the equitable relief Plaintiff seeks is "illusory" and that certification under 23(b)(1)(A) is therefore inappropriate. Doc. 99 at 22. The proposed class meets the requirements of Rule 23(b)(1)(B).

### D. Definition of the Certified Class

In the alternative, Defendants argue that Plaintiff's proposed class is overbroad because it is not limited to Plan participants who invested in the five challenged GS Funds and because it does not include an end date. Doc. 99 at 25. Defendants therefore propose that the class period should end on June 6, 2017, the date that the last of the GS Funds at issue was removed from the plan. *Id.* In reply, Plaintiff explains that he does not object to Defendants' proposed tailoring of the class. Doc. 114 at 10 n.19. Accordingly, the Court adopts Defendants' definition and certifies the following class:

> All participants and beneficiaries of the Goldman Sachs 401(k) Plan whose Plan account held the Goldman Sachs Large Cap Value Fund, the Goldman Sachs Mid Cap Value Fund, the Goldman Sachs High Yield Fund, the Goldman Sachs Core Fixed Income Fund, and/or the Goldman Sachs Short-Duration Government Fund at any time between October 25, 2013 and June 6, 2017 (inclusive), and whose individual accounts suffered losses as a result of the conduct alleged in Counts One through Four of the Complaint,[10] excluding Defendants, any of their

---

[10] To address Defendants' concerns about standing and typicality, the Court borrows this limiting language from *Moreno*, 2017 WL 3868803, at *11 (citing *Krueger*, 304 F.R.D. at 579 (amending class definition in defined-contribution ERISA case to refer "to participants and beneficiaries 'who were injured by' the alleged wrongful conduct ... [to] address Defendants' concerns regarding class members' standing")).

directors, and any officers or employees of Defendants with responsibility for the Plan's investment or administrative functions.

### E.   Appointment of Class Counsel

Rule 23(g) governs appointment of class counsel.  Under this rule, courts must consider (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class," and may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2017 WL 1273963, at *16 (quoting Fed. R. Civ. P. 23(g)(1) and collecting cases).

Based on Plaintiff's counsel's diligence in prosecuting this case to date, the Court has no qualms about their work identifying and investigating potential claims.  Similarly, counsel have demonstrated a depth of knowledge of the applicable law and that they have the resources to represent the class.  Counsel and their firm have a great deal of experience in handling class actions, particularly in cases alleging breach of fiduciary duty.  *See* Doc. 86-1.  Accordingly, the Court appoints Kai Richter, Benjamin Bauer, and Brock Specht of Nichols Kaster, PLLP and Major Khan of MKLLC Law as class counsel.

### IV.   Conclusion

For the foregoing reasons, Plaintiff's motion for class certification is GRANTED subject to the conditions set forth above.  The Court requests the Clerk of Court to file this Opinion and Order under seal with access restricted to the Court and the attorneys of record listed on ECF.  The Court additionally directs the parties to submit a copy of this

26

Opinion and Order with any proposed redactions on consent by February 22, 2022 for posting on the public docket.

The parties are directed to appear for a telephonic status conference on February 25, 2022 at 9:30 am.  The parties are directed to dial (877) 411-9748 and enter access code 3029857# at that time.  The Court will address the parties' letter-motions regarding their anticipated motions for summary judgment, Docs. 155–62, at the conference.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 82.

SO ORDERED.

Dated:     February 14, 2022
           New York, New York

_____
Edgardo Ramos, U.S.D.J.