# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

March 4, 2022

By ECF

The Honorable Edgardo Ramos
United States District Court for the Southern District of New York
United States Courthouse
40 Foley Square, Courtroom 619
New York, New York  10007

      Re:    *Falberg* v. *The Goldman Sachs Group, Inc.*, No. 19-cv-09910 (ER)

Dear Judge Ramos:

Pursuant to the Court's Individual Practices Rule 2.A.ii, Defendants request a pre-motion conference on their anticipated motion to compel certain members of the recently certified class to arbitrate their claims and to stay those claims pending the completion of that arbitration.

On February 14, 2022, the Court certified a class of all participants in the Goldman Sachs 401(k) Plan whose Plan accounts held one or more of five mutual funds managed by Goldman Sachs Asset Management between October 25, 2013 and June 6, 2017 and who "suffered losses as a result of the conduct alleged" in the Complaint.  (ECF No. 163 at 25-26.)  As Defendants previously advised the Court, now that a class has been certified, Defendants seek to compel arbitration of the claims of class members who are subject to binding arbitration agreements.  (*Id.* at 21.)  Defendants estimate that approximately 17,500 Plan participants' accounts held investments in one of the five challenged mutual funds during the class period, at least 8,100 of whom have entered into binding agreements requiring them to arbitrate their claims in this case. Those class members should be excluded from the certified class and compelled to arbitrate their claims against Defendants.

The Second Circuit has emphasized that it is "difficult to overstate the strong federal policy" that the Federal Arbitration Act ("FAA") creates "in favor of arbitration."  *Arciniaga* v. *Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006).  Under the FAA, agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Here, at least 8,100 class members are bound by one of two different agreements to arbitrate.  Because some class members are bound by both agreements, the below numbers overlap to some degree.

- First, approximately 3,600 class members are former Goldman Sachs employees who entered into separation agreements with Goldman Sachs when they left the firm.  With minor variations, those agreements mandate that "[a]ny dispute or claim arising out of or

The Honorable Edgardo Ramos                                                    -2-

based upon or relating in any way to this agreement, or to your employment *or other association with the [Goldman Sachs Group]*, or the termination of your employment, will be settled by arbitration."   (ECF No. 101-16 (exemplar of separation agreement) at GS0060934 (emphasis added).)

- Second, approximately 5,400 class members, in registering with FINRA, entered into FINRA Form U4s.  With minor variations, those agreements mandate arbitration of "*any dispute, claim or controversy that may arise between me and my firm*, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of [FINRA]."   (ECF No. 102-17 (exemplar of Form U4) § 15A.5 (emphasis added).) FINRA rules, in turn, require arbitration of any dispute that "arises out of the business activities of a member or an associated person" and "is between or among" members, members and associated persons, or associated persons.  FINRA Rule 13200(a).[*]

Courts have compelled arbitration based on those same agreements.  In recently ordering arbitration in another class action involving Goldman Sachs in this District, the court held that "the arbitration provisions of the Separation Agreements . . . are enforceable under contract law and encompass the claims in suit."  *Chen-Oster* v. *Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 233 (S.D.N.Y. 2020).  As the court explained, "[t]hose who executed Separation Agreements received lump-sum payments and discretionary severance benefits, including continued salary for a period following employment, year-end bonuses, and/or additional consideration that amounted to thousands, hundreds of thousands, or even millions of dollars," and thus are bound by their agreements to arbitrate.  *Id*. at 241.  Courts also routinely compel arbitration based on the "expansive" arbitration provisions in FINRA Form U4s, *Murphy* v. *UBS Sec., LLC*, 2014 WL 285093, at *7, 13-14 (S.D.N.Y. Jan. 27, 2014), including in cases involving ERISA claims, *see*, *e.g.*, *Williams* v. *Imhoff*, 203 F.3d 758, 764-67 (10th Cir. 2000); *Strebler* v. *Morgan Stanley & Co.*, 2010 WL 2557815, at *2 (N.D. Ohio June 22, 2010); *Thaning* v. *UBS/Paine Webber*, 2008 WL 2024884, at *3 (N.D. Cal. May 8, 2008).  In response to the question raised by the Court in its class-certification decision (ECF No. 163 at 22), none of those courts suggested that the arbitration provisions in either agreement might be "example[s] of a 'relatively new and untested' species of arbitration clause" that has been "dubbed an 'infinite arbitration clause.'"  *McFarlane* v. *Altice USA, Inc.*, 524 F. Supp. 3d 264, 275 (S.D.N.Y. 2021) (cited by ECF No. 163 at 22).

Citing *Cooper* v. *Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021), Plaintiff previously argued that "the individual agreements upon which Defendants rely are unenforceable

---

[*] Identifying class members who registered with FINRA requires a name-by-name comparison between Goldman Sachs' records and FINRA's public records.  Despite the existence of some variation between those two sources (due to, for example, the use of middle initials or maiden names), Goldman Sachs has identified at least 5,400 class members who registered with FINRA and thus are bound by FINRA Form U4s.  Based on its ongoing review, that number may increase by the time Goldman Sachs files this motion.

The Honorable Edgardo Ramos                                                -3-

with respect to derivative claims on behalf of the Plan." (ECF No. 114 at 8.) Plaintiff's reliance on *Cooper* is misplaced. In *Cooper*, the Second Circuit did not announce a broad, categorical rule that ERISA claims for breach of fiduciary duty on behalf of a retirement plan cannot be arbitrated given their derivative nature. The court instead held that the language of the specific arbitration clause before it—which "mandate[d] arbitration of 'all legal claims *arising out of or relating to employment*'"—did not cover fiduciary-breach claims against an outside investment advisor that "hinge[d] entirely on the [advisor's] investment decisions." 990 F.3d at 178, 183 (emphasis added). As the court explained, "a claim will 'relate to' employment only if the merits of that claim involve facts particular to an individual plaintiff's own employment." *Id.* at 184. Applying that standard, the court concluded that "[n]one of the facts relevant to the merits of [the plaintiff's] claims against [the investment advisor] relates to his employment." *Id.* at 183. Unlike in *Cooper*, the arbitration clauses here are not limited to claims "relating to employment," but rather encompass any disputes relating to the class member's "employment *or other association with*" Goldman Sachs (separation agreements) or any dispute "that may arise between [the class member] and my firm [Goldman Sachs]" and that "arises out of the business activities of a member or an associated person" (Form U4; FINRA Rule 13200(a)).

Plaintiff also previously argued that arbitration is not required under FINRA Form U4's arbitration clause because "FINRA Rules explicitly exempt class or collective actions and derivative actions like this." (ECF No. 114 at 8 n.15.) That argument fails as well. Because Plan participants who registered with FINRA are subject to FINRA Form U4's binding arbitration agreement, this Court should exclude them from the certified class. In certifying the class, the Court declined to address that issue, which will be squarely presented, together with evidentiary support, in this proposed motion. (*See* ECF No. 163 at 22 ("In this instance, the Court need not address whether or not these arbitration agreements would bar certain of the proposed class members' claims, because these go to individual defenses rather than certification.").) If the Court excludes Plan participants who are bound by FINRA Form U4's arbitration clause from the certified class, then the FINRA rule on which Plaintiff relies, FINRA Rule 13204, would be inapplicable. *See* FINRA Rule 13204(a)(4) ("A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action *until . . . [t]he member of the certified or putative class is excluded from the class by the court . . . .*") (emphasis added).

Respectfully submitted,

/S/ Thomas C. White

Thomas C. White

cc:      All Counsel of Record (By ECF)