MANDATE

1:19-cv-09910-ER

22-2689-cv
*Falberg v. The Goldman Sachs Group, Inc.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of February, two thousand twenty-four.

Present:
   GERARD E. LYNCH,
   WILLIAM J. NARDINI,
   SARAH A. L. MERRIAM,
    *Circuit Judges.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/07/2024

LEONID FALBERG, as representative of a class of similarly situated persons, and on behalf of The Goldman Sachs 401(k) Plan,

   *Plaintiff-Appellant*,
v.

THE GOLDMAN SACHS GROUP, INC., THE GOLDMAN SACHS 401(K) PLAN RETIREMENT COMMITTEE,

   *Defendants-Appellees*,

JOHN DOES 1-20,

   *Defendants*.

22-2689-cv

For Plaintiff-Appellant:  ADAM W. HANSEN, Apollo Law LLC (Brock J. Specht, Paul J. Lukas, Benjamin J. Bauer, Nichols Kaster, PLLP, *on the brief*), Minneapolis, MN

MANDATE ISSUED ON 03/07/2024

| | |
|---|---|
| For Defendants-Appellees: | RICHARD C. PEPPERMAN II (Thomas C. White, *on the brief*), Sullivan & Cromwell LLP, New York, NY |

Appeal from a judgment of the United States District Court for the Southern District of New York (Edgardo Ramos, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Leonid Falberg, a participant in the Goldman Sachs 401(k) Plan (the "Plan") who filed a complaint as a representative of a class of similarly situated persons and on behalf of the Plan itself, appeals from a judgment of the United States District Court for the Southern District of New York (Edgardo Ramos, *District Judge*), entered on September 15, 2022. Falberg's suit arises from the alleged mismanagement of the Plan and self-dealing by the Plan's sponsor, Defendant-Appellee The Goldman Sachs Group, Inc. ("Goldman"); the Plan's manager, Defendant-Appellee The Goldman Sachs 401(k) Plan Retirement Committee (the "Committee"); and the Committee's members, John Does 1-20; (collectively, "Defendants"), in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Specifically, Falberg contends that Defendants breached their fiduciary duties in managing the Plan by giving preferential treatment to five mutual funds (the "Challenged Funds") managed by Goldman Sachs Asset Management ("GSAM") between October 25, 2013, and June 6, 2017 (the "Class Period"). The district court granted summary judgment on all claims in favor of the Defendants. This appeal followed. We assume the parties' familiarity with the case.

2

To prevail on a motion for summary judgment, "[t]he movant must show that there is no genuine issue as to any material facts, and that [it is] entitled to judgment as a matter of law." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021).[1] "We review the district court's grant of summary judgment *de novo*, construing the facts in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Id.*

I. **Fiduciary Duty Claims**

ERISA protects plan beneficiaries in a variety of ways, including by "establishing standards of conduct, responsibility, and obligation for fiduciaries." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004) (quoting 29 U.S.C. §1001(b)). ERISA mandates that fiduciaries adhere to the duty of loyalty, which requires them to "discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." *In re DeRogatis*, 904 F.3d 174, 193 (2d Cir. 2018) (quoting 29 U.S.C. § 1104(a)(1)(A)). A fiduciary that puts its own economic interests ahead of the interests of the retirement plan and its beneficiaries breaches its duty of loyalty and thereby violates ERISA. *See Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 32 (2d Cir. 2002). ERISA also mandates that fiduciaries adhere to the duty of prudence, which requires them to "discharge their duties with the care, skill, prudence, and diligence under the circumstances that a prudent person acting in a like capacity and familiar with such matters

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alteration marks, footnotes, and citations.

3

would use." *In re Derogatis*, 904 F.3d at 193 (quoting 29 U.S.C. § 1104(a)(1)(B)). "An ERISA fiduciary acts imprudently by failing to properly monitor investments and remove imprudent ones." *Cunningham v. Cornell Univ.*, 86 F.4th 961, 983 (2d Cir. 2023) (quoting *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015)). In assessing the prudence of a fiduciary, courts apply an objective standard and "must judge a fiduciary's actions based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight." *Sacerdote v. New York Univ.*, 9 F.4th 95, 107 (2d Cir. 2021).

### A. Duty of Loyalty

Falberg argues that Defendants breached their duty of loyalty by retaining the Challenged Funds for the benefit of Goldman but at the expense of Plan participants. Specifically, Falberg argues that Defendants violated their duty of loyalty by using a less rigorous selection process for GSAM funds compared to nonproprietary funds, and by retaining the Challenged Funds even though they cost more or performed worse than similar options. We agree with the district court that these arguments fail.

As an overarching matter, Falberg failed to introduce evidence that Defendants retained the Challenged Funds in the Plan for the purpose of advancing their interests; indeed, the evidence in the record suggests otherwise. For example, there was evidence that Defendants employed a robust process to manage potential conflicts of interest: the Committee required its members to participate in fiduciary training sessions, which is not a standard market practice, and retained an investment consultant to act as an independent advisor and provide unbiased advice about the Plan's fund offerings. Moreover, there is no evidence in the record that either the independent

4

Case 1:19-cv-09910-ER Document 265 Filed 03/07/24 Page 5 of 9
Case 22-991, Document 166, 03/07/2024, 3615903, Page5 of 9

investment advisor or the Committee members had any personal incentive to favor the Challenged Funds.

Falberg's conclusory assertions that Defendants gave GSAM funds preferential treatment are unsupported by the record. For example, with respect to the process for selecting new investment funds, the Committee members testified without contradiction that they applied the same standard to GSAM and other funds, and that they based their decisions on the merits of each option. Likewise, the record does not bear out Falberg's argument that Defendants preferred GSAM funds even when they cost more or performed worse than alternative investments. There was no genuine dispute that the Committee reevaluated its investments and consulted with the fund managers following underperformance by the Challenged Funds. Further, after an extensive investment review, the Committee removed all the Challenged Funds after a sustained period of underperformance.

At best, Falberg takes issue with the timeliness of removal of the Challenged Funds. But a fiduciary does not breach its duty of loyalty by choosing to retain an investment that, in the fiduciary's reasonable assessment, may perform well in the long term despite short-term underperformance. And more to the point with respect to the duty of loyalty, there is no evidence that Defendants' weighting of long-term versus short-term performance with respect to any particular fund was somehow skewed by favoritism toward GSAM funds. Accordingly, the district court did not err by concluding that there were no genuine disputes of material fact precluding summary judgment in favor of Defendants as to the duty of loyalty claim.

### B. Duty of Prudence

Falberg also argues that Defendants breached their duty of prudence because they did not establish formal criteria for selecting or monitoring the Plan's investments. We disagree. The duty of prudence "focuses on a fiduciary's conduct in arriving at an investment decision, not on its results, and asks whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Sacerdote*, 9 F.4th at 107. In such a context-specific inquiry, "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on [its] experience and expertise." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022).

Here, the district court correctly determined that Falberg failed to introduce sufficient evidence that a prudent fiduciary in Defendants' position "would have acted differently." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 720 (2d Cir. 2013). Falberg does not dispute that the Committee members were experienced financial professionals or that they were supported by qualified ERISA counsel and independent investment advisors. Yet, Falberg argues that because Goldman did not adopt a formal Investment Policy Statement ("IPS") for selecting and monitoring plan investments, the Committee was not able to properly scrutinize the Challenged Funds. But he does not point to any evidentiary basis for concluding that a prudent fiduciary would have necessarily adopted an IPS, as opposed to relying on another form of deliberative process for selecting and reviewing investments. In fact, experts for both sides agreed that although adoption of an IPS may represent

6

a "best practice" for fiduciaries, it is "not required" that fiduciaries adopt one in order to be found to have acted prudently.   Joint App'x at 1754.

Further, the undisputed evidence in the record indicates that, even without an IPS, the Committee followed a deliberative and rigorous process when selecting and monitoring investments.  The Committee's independent advisor continually monitored and evaluated the Plan's investment options, and provided the Committee members with detailed information, "including monthly and quarterly performance reports, written reports summarizing meetings with investment managers, . . . commentary and other information requested by the Committee on a periodic basis."  *Id.* at 150.  Committee members reviewed those reports prior to attending Committee meetings. Falberg's argument that the adoption of more formal criteria would have improved Plan performance is supported by nothing more than mere speculation.  Given that Falberg failed to submit evidence sufficient to create a dispute as to whether a prudent fiduciary would have acted differently, his duty of prudence claim fails.  *See McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment.").

**II.     Prohibited Transactions**

Falberg also argues that Goldman engaged in prohibited transactions by retaining the Challenged Funds in the Plan without securing fee rebates from GSAM.  To protect plan beneficiaries, ERISA categorically bars "certain transactions involving plan assets that are believed to pose a high risk of fiduciary self-dealing."  *Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, 54 F.4th 115, 119 (2d Cir. 2022); *see* 29 U.S.C. § 1106.   Falberg asserts that the Committee's

7

inclusion of proprietary mutual funds in the Plan was a prima facie prohibited transaction. However, under the Department of Labor's Prohibited Transaction Exemption 77-3 ("PTE 77-3"), plan investments in mutual funds managed by an affiliate are exempt from § 1106 if certain requirements are met. *See* 42 Fed. Reg. 18734, 18735 (Apr. 8, 1977). Falberg argues that Defendants did not meet one of the requirements for the relevant exemption—that "[a]ll other dealings between the plan and the investment company . . . are on a basis no less favorable to the plan than such dealings are with other shareholders of the investment company," *id.*—because GSAM paid fee rebates to other plans that invested in their proprietary funds and did not do the same with respect to the Plan.

The district court correctly determined that Falberg's prohibited transactions claim fails. There is no genuine dispute that (1) GSAM paid fee rebates with respect to some retirement plans to Hewitt Associates, which provided recordkeeping services to many retirement plans including the Plan, and (2) the shareholder services agreement between GSAM and Hewitt Associates provided that no such fee rebates would be provided for any retirement plans that invested in the GSAM funds before April 1, 2009. Because the Plan had invested in GSAM funds before April 2009, it fell into the category of plans that were ineligible for fee rebates. The district court properly concluded, therefore, that the Plan was treated no less favorably than other retirement plans because all retirement plans that used Hewitt Associates as a recordkeeper were subject to the same fee rebate eligibility requirements. Any difference in treatment between the Plan and certain other retirement plans which did receive fee rebates was either because those plans did not use Hewitt Associates as their recordkeeper or because they invested in the GSAM funds after

8

April 1, 2009. The district court thus properly granted Defendants summary judgment as to Falberg's prohibited transaction claim.

### III. Duty to Monitor

Finally, Falberg argues that the district court erred in granting Defendants summary judgment on his duty-to-monitor claim. But Falberg "cannot maintain a claim for breach of the duty to monitor absent an underlying breach of the duties imposed under ERISA" by Defendants. *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016).

* * *

We have considered the remainder of Falberg's arguments and find them to be unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court



9

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit